Jerry VAN DYKE and Shirley Van Dyke *v.* Dorsey D.
GLOVER, Robert Ward, Nature Estates, Inc., Phinis Warnex,
and Sparks Brothers Realty

95-1348                                        934 S.W.2d 204

Supreme Court of Arkansas
Opinion delivered November 25, 1996

*Friday, Eldredge & Clark*, by: *John Dewey Watson* and *Allison Graves*, for appellants.

*Glover, Glover & Roberts*, by: *David M. Glover* and *Mark Roberts*, for appellees Dorsey D. Glover and Robert Ward.

*Ellis Law Firm*, by: *George D. Ellis*, for appellees Nature Estates, Inc., Phinis Warnex, and Sparks Brothers Realty.

ROBERT L. BROWN, Justice. Appellants Jerry Van Dyke and Shirley Van Dyke appeal a dismissal of their complaint against appellees Dorsey D. Glover, Robert Ward, Nature Estates, Inc.,

Phinis Warnex, and Sparks Brothers Realty. They contend that the trial court erred in finding that they did not state facts upon which relief can be granted under Ark. R. Civ. P. 12(b)(6). We agree with the appellants, and we reverse the order of dismissal and remand the matter.

On May 26, 1995, the Van Dykes filed their complaint against Glover, Ward, Nature Estates, Warnex, and Sparks Brothers. The history of the dealings among the parties, according to the Van Dykes, is set out in the allegations of the complaint. They first alleged that Glover and Ward owned four tracts of land in Hot Spring County. The Van Dykes owned land near those tracts and approached Ward and Glover about purchasing the tracts. On or about June 20, 1994, Glover on behalf of himself and Ward hand-delivered an offer of sale to Shirley Van Dyke with a color-coded map of the four tracts. (The map was Exhibit A and the Glover offer was Exhibit B to the complaint.) Shirley Van Dyke then went to Glover's office on June 21, 1994, and orally accepted the terms of the written offer. Shirley Van Dyke also offered to make a down payment on the tract to be purchased and option payments on the three tracts to be optioned and to pay earnest money as well, but Glover told her that was not necessary at that time to consummate the contract because he did not want to receive payment until after the first of the year. The Van Dykes left for California with the belief that they had a contract, and Glover left for Europe. Shirley Van Dyke later began pursuing information on timber values on the tracts, water service, and the feasibility of constructing a lake.

The Van Dykes asserted in their complaint that Shirley's actions informed Nature Estates, Warnex, and Sparks Brothers of their contract with Glover and Ward and that Nature Estates, Warnex, and Sparks Brothers offered Ward and Glover a higher price for the land. The Van Dykes further assert that Nature Estates, Warnex, and Sparks Brothers were engaged in subdividing the property for mobile home/trailer sites, and they had entered into purchase agreements to sell some of the subdivided tracts. The Van Dykes sought (1) cancellation of the Glover/Ward contract with Nature Estates, Warnex, and Sparks Brothers as well as any contracts to third persons; (2) specific performance of their contract with Glover and Ward; (3) a preliminary injunction to prevent any further transfer or sale of the property by Nature Estates, Warnex, and Sparks Brothers; and (4) recovery from Nature Estates, Warnex, and

Sparks Brothers for tortious interference with their contract.

The letter from Glover to Shirley Van Dyke was attached to the complaint as Exhibit B and reads:

> The purpose of this letter is to set forth in writing for your convenience the terms Robert Ward and I discussed with you here in my office on Friday regarding a tract of land you are interested in purchasing, and to make a proposal to you regarding options on three additional tracts of land you have indicated that you and Jerry might be interested in purchasing.
>
> I will hand you with this letter a copy of an ownership map with the various tracts of land marked with a different color for easy identification. The land you have expressed an interest in buying now is marked in pink and contains approximately 109 acres. At $675.00 per acre, the total purchase price on this tract will be $73,575.00. With a 20% down payment ($14,715.00) we would agree to finance the $58,860.00 balance of the purchase price for a period of five years with interest at 8% per annum, which would make your monthly payments approximately $1,200.00. Obviously, if you want to pay more down there would [be] less to finance and your payments would be reduced accordingly. You let us know what you are comfortable with and we will put the figures together for you.
>
> The tracts you have indicated you would like an option to purchase are the area marked in blue on your map containing 77 acres, which we will refer to as Tract 1, the area marked in yellow containing 57 acres, which we will refer to as Tract 2 and the area marked in green containing 100 acres, which we will refer to as Tract 3. We value Tract 1 and 2 at $800.00 an acre and Tract 3 at $900.00 an acre. We feel that this land, by virtue of timber growth, etc., is increasing in value at the rate of 10% a year. We would grant you a two year option to purchase either or all option tracts of land in exchange for your payment of 5% of the current value as option money (all of which would be credited back against the purchase price if you elect to buy) and an amount equal to 10% per annum to your date of purchase if you elect to buy, which we feel will offset the growth factor and in-

creased value of the property.

> As an example, if you wanted to buy the 77 acre tract marked in blue, which we have referred to as Tract 1 today, the price at $800.00 per acre would be $61,600.00. If, instead of buying it today, you wanted a two year option to buy it, you would pay 5% of that value ($3,080.00) for that option with that amount to be credited against the purchase price if you elect to buy, otherwise to be forfeited. Using that same example, if you decided to go ahead and buy the land one year after the option date, you would pay the purchase price of $61,600.00, plus the 10% growth factor of $6,160.00 for a total of $67,760.00, from which would be deducted the $3,080.00 option money payment, which would result in a total purchase price of $64,680.00, if my math is correct.

> We will go over all of this when you are here at the office again today, but I thought that Jerry might not come with you, and it would be beneficial to have something in writing to discuss with him.

The Van Dykes filed a notice of *lis pendens* against the four tracts.

On June 13, 1995, Glover and Ward moved to dismiss the complaint on grounds that the Glover letter did not comply with the statute of frauds — Ark. Code Ann. § 4-59-101(a)(4) (Repl. 1996). Glover and Ward also argued that the complaint otherwise failed to state sufficient facts to satisfy the statute of frauds for an oral contract. Nature Estates, Warnex, and Sparks Brothers filed their separate answer and affirmatively pled that the complaint should be dismissed because the statute of frauds had not been satisfied. In addition, they filed a counterclaim for slander of title and interference with contractual relations and business expectancy.

On July 18, 1995, a hearing was held on the motion to dismiss. Counsel for the Van Dykes maintained that all of the essential elements of an agreement were contained in the Glover letter. At the conclusion of the hearing the trial court informed the parties that its letter opinion would be forthcoming after it had reviewed the law. In a letter dated July 21, 1995, the trial court advised the attorneys that it had decided to grant the motion to dismiss for failure to comply with the statute of frauds.

On August 21, 1995, the Van Dykes filed an amended and substituted complaint in which they added a fifth count for promissory estoppel or detrimental reliance against Glover and Ward. Also on August 21, 1995, the Van Dykes filed a motion for the trial court to reconsider its ruling to dismiss the original claims in their complaint. The order of dismissal had not yet been entered.

On September 5, 1995, a hearing was held on the motion for reconsideration and the amended complaint. On September 19, 1995, the trial court entered its order of dismissal. The trial court stated in its order that it had considered "the pleadings, the briefs, the arguments of counsel and the cases cited to the court" and specifically found that the Glover letter did not comply with the statute of frauds and, therefore, was not an enforceable contract:

> The [C]ourt thinks the letter is an offer but the letter has options in it. The Court cannot find an acceptance because to the document on its face one cannot say, "I accept." There are too many options in there to just accept it. It takes a specific acceptance of option one, two or three. The Court thinks that could have been done. There were sufficient items there (sic) it could constitute an offer; but the Court finds no acceptance. Likewise for the above reasons, the court finds the amended and substituted complaint does not state facts upon which relief may be granted on the doctrine of detrimental reliance or promissory estoppel. Defendants' counterclaims are pending and are transferred to circuit court.

The trial court dismissed the Van Dykes' original complaint and their amended and substituted complaint and granted a Rule 54(b) certification for purposes of appeal because the counterclaim against the Van Dykes was still pending. *See* Ark. R. Civ. P. 54(b).

The Van Dykes urge on appeal that they did plead sufficient facts on which relief could be granted, including facts sufficient to satisfy the statute of frauds. In considering a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6), the facts alleged in the complaint are treated as true and are viewed in the light most favorable to the plaintiff — in this case, the Van Dykes. *Malone* v. *Trans-States Lines, Inc.*, 325 Ark. 383, 926 S.W.2d 659 (1996); *Deitsch* v. *Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992). Though counsel for appellees contended at oral argument that the

trial court considered matters outside the pleadings in deciding to grant a dismissal, there is nothing in the abstract to substantiate that claim. Indeed, the order of dismissal specifically states to the contrary.

The issue then is whether the Glover letter was a sufficient memorandum to satisfy the statute of frauds, which reads:

> (a) Unless the agreement, promise, or contract, or some memorandum or note thereof, upon which an action is brought is made in writing and signed by the party to be charged therewith, or signed by some other person properly authorized by the person sought to be charged, no action shall be brought to charge any:
>
> . . . .
>
> (4) Person, upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them;

Ark. Code Ann. § 4-59-101(a)(4) (Repl. 1996). The Van Dykes initially contend that oral acceptance of a written offer by a party sought to be charged meets the requirements of the statute of frauds. This precise issue has been addressed in Arkansas, and, generally speaking, an offer may be accepted by spoken words or conduct. *Childs* v. *Adams*, 322 Ark. 424, 909 S.W.2d 641 (1995); *Baker* v. *Taylor & Co.*, 218 Ark. 538, 237 S.W.2d 471 (1951); *Jones* v. *School Dist. No. 48*, 137 Ark. 414, 208 S.W.2d 798 (1919); *ERC Mortgage Group, Inc.* v. *Luper*, 32 Ark. App. 19, 795 S.W.2d 362 (1990); *see also* E. LeFevre, *Oral Acceptance of A Written Offer by a Party Sought to be Charged as Satisfying Statute of Frauds*, 30 A.L.R.2d 972 (1953). Whether there was an acceptance is a question for the trier of fact. *Robertson* v. *Ceola*, 255 Ark. 703, 501 S.W.2d 764 (1973); *James* v. *P.B. Price Constr. Co.*, 240 Ark. 628, 401 S.W.2d 206 (1966).

■ The next question to be addressed is whether the Glover letter contained all the essential terms of a contract in order to comply with the statute of frauds. The general rule has been stated in this fashion:

> Unless the essential terms of the sale can be ascertained from the writing itself, or by reference in it to something else, the writing is not [in] compliance with the statute; and if the

writing be thus defective, it cannot be supplied by parol proof, for that would at once introduce all the mischiefs which the statute was intended to prevent.

*Sorrells* v. *Bailey Cattle Co.* , 268 Ark. 800, 811-12, 595 S.W.2d 950, 955 (Ark. App. 1980), *quoting Williams* v. *Morris*, 95 U.S. 444 (1877).

■ As an initial matter, it is undisputed that the writing was signed by the party to be charged, as the statute of frauds requires, because Glover signed the document. From the allegations in the complaint, he had the authority to bind Ward. However, "[a] contract for the sale of land which fails to show the terms and conditions of the sale, the price to be paid, and the time for payment is not sufficient to satisfy the requirements of the statute of frauds." *Wyatt* v. *Yingling*, 213 Ark. 160, 163, 210 S.W.2d 122, 123 (1948), *quoting Tate* v. *Clark*, 203 Ark. 231, 156 S.W.2d 218 (1941).

■■ Moreover, a writing may flunk the test of the statute of frauds when it does not sufficiently describe the land to be sold. *See, e.g., Richardson* v. *Stuberfield*, 168 Ark. 713, 271 S.W. 345 (1925); *Sossamon* v. *Davis*, 271 Ark. 156, 607 S.W.2d 405 (Ark. App. 1980); *Boensch* v. *Cornett*, 267 Ark. 671, 590 S.W.2d 55 (Ark. App. 1979). In the case at hand, the land was adequately described because there was not only the Glover letter giving the acreage in each tract but a color-coded map accompanying the letter that illustrated the tracts of land at issue. A writing may also fail to comply with the statute of frauds because the time and method of payment are not set forth. *See, e.g., Jonesboro Investment Corp.* v. *Cherry*, 239 Ark. 1035, 396 S.W.2d 284 (1965); *Schuman* v. *Hughes*, 203 Ark. 395, 156 S.W.2d 804 (1941); *Tate* v. *Clark, supra.* That is not a problem in the instant case. The purchase price per acre per tract of land was adequately set out together with down payments and option payments as well as the terms for financing the balance due.

The ultimate issue to be decided is whether the Glover letter is so indefinite with its alternative payment plans that the essential terms of the agreement cannot be distilled from it. To be sure, the letter permitted the Van Dykes to pay more down on the purchase price for the land to be bought and thereby finance less of the balance owing. It also provided that on the three "option" tracts, the Van Dykes could pay a fixed option price for a two-year option

to purchase. The Van Dykes could also purchase one or more of the "option" tracts immediately, or at any time up to two years subject to an adjustment in the payment plan. The formula for the purchase price for all four tracts and the credits, if applicable, were set out in the letter.

The circuit court found too many ways to proceed in the Glover letter for it to be susceptible to an acceptance and concluded dismissal was appropriate. We disagree. The allegations in the complaint, which we must take as true for purposes of a motion to dismiss are:

> 7. After plaintiff Shirley Van Dyke discussed with plaintiff Jerry Van Dyke the Offer of defendants Dorsey D. Glover and Robert Ward to sell the Property, the Van Dykes agreed to accept the Offer. On or about June 21, 1994, plaintiff Shirley Van Dyke went to the office of defendant Dorsey D. Glover and orally informed him the Van Dykes accepted the terms of the Offer of defendants Dorsey D. Glover and Robert Ward.

> 8. Plaintiff Shirley Van Dyke, upon accepting the Offer of defendants Dorsey D. Glover and Robert Ward, offered to pay the down payment and option payments, and also offered to pay an earnest money check to defendant Dorsey D. Glover to evidence the Van Dykes' good faith intention and ability to carry out the terms of the purchase contract.

Hence, the Van Dykes accepted the offer and then tendered a down payment and option payments as well as earnest money. We must construe these allegations in the complaint in favor of the Van Dykes, that is, that an acceptance was made to purchase the one tract and to preserve an option to purchase the remaining three tracts. Whether an acceptance was actually made and the precise payment plan agreed to become questions of fact and matters of proof in the trial court.

We reach the same result with respect to the Van Dykes' claim of detrimental reliance and promissory estoppel. The Van Dykes argue that the statute of frauds has no bearing on the doctrine of promissory estoppel. Glover and Ward, on the other hand, argue that the Van Dyke's reliance was not reasonable.

The blackletter law on promissory estoppel is found in

the Restatement (Second) of Contracts:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts, § 90 (1981); *Reynolds v. Texarkana Constr. Co.*, 237 Ark. 583, 374 S.W.2d 818 (1964). *See also Childress v. McManus*, 282 Ark. 255, 668 S.W.2d 9 (1984). Whether there was actual reliance by the Van Dykes and whether it was reasonable is a question for the trier of fact, but at the pleading stage, the allegation must be sufficiently stated. *Sanders v. Arkansas-Missouri Power Co.*, 267 Ark. 1009, 593 S.W.2d 56 (Ark. App. 1980). The court of appeals has recognized that reasonable detrimental reliance may be raised to defeat the defense of statute of frauds. *See Country Corner Food & Drug, Inc. v. Reiss*, 22 Ark. App. 222, 737 S.W.2d 672 (1987); *Ralston Purina Co. v. McCollum*, 271 Ark. 840, 611 S.W.2d 201 (Ark. App. 1981).

Here, the Van Dykes alleged that they relied on the existence of the contract to their detriment and that they incurred expenses while investigating timber values, water service on the property, and the feasibility of building a lake on the property. This sufficiently states a cause of action for promissory estoppel or detrimental reliance.

We conclude that the Van Dykes have adequately stated facts to withstand a motion to dismiss on their five counts for relief.

Reversed and remanded.

DUDLEY and NEWBERN, JJ., dissent.

DAVID NEWBERN, Justice. This is essentially a specific performance case. The question is whether the document alleged to have been an offer to sell land was sufficiently definite to permit the formation of a contract upon evidence of a general "acceptance." The Chancellor correctly held that it was not. The dismissal pursuant to Ark. R. Civ. P. 12(b)(6) was correct because facts stating a claim upon which relief could be granted were not stated in the complaint.

### 1. Formation of a contract

With respect to the approximately 109 acres Shirley Van Dyke had expressed an interest in buying immediately, the letter from Dorsey D. Glover to Ms. Van Dyke gave a purchase price but proposed a sliding payment scale based on the amount of down payment and then said, "You let us know what you are comfortable with and we will put the figures together for you."

As to the other tracts in which Mrs. Van Dyke had expressed an interest, the letter stated current land values and then presented an example of a kind of deal that might be entered: "As an example, if you wanted to buy the 77 acre tract marked in blue. . . . If, instead of buying it today you wanted a two year option to buy. . . . Using that same example, if you decided to go ahead and buy the land one year after the option date. . . ." The letter concluded by saying, "We will go over all of this when you are here at the office today. . . ." The complaint alleged simply that the "offer" was "accepted" by Mrs. Van Dyke when she returned to the office and offered earnest money.

As we held in *Wyatt* v. *Yingling,* 213 Ark. 160, 210 S.W.2d 122 (1948), to satisfy the statute of frauds, a writing must be such that all of the contract can be collected from it. To say that the writing in this case formed a contract would leave unknown the terms of financing and payment with respect to the 109-acre tract. It would also leave unknown the option durations and payment options choices among those proposed with respect to the other tracts in which Mrs. Van Dyke had expressed interest.

The Chancellor was correct in holding the writing was insufficient to support a finding of a contract upon a general acceptance. To have formed a contract satisfying the statute of frauds, the writing "must have embraced the terms and conditions of the sale and it must have been a mutual contract." *Tate* v. *Clark,* 203 Ark. 231, 156 S.W.2d 218 (1941).

### 2. Promissory estoppel

As to the added alternative claim of promissory estoppel, the Van Dykes' only allegation of detrimental reliance was as follows:

> In October, 1994, plaintiff Shirley Van Dyke, relying upon the aforementioned representations of Dorsey D.

Glover, began pursuing information regarding timber values on the Property, water service to the Property, and the feasibility of constructing a man-made lake on the property, and in so doing incurred valuable expenditures of time and money.

The Chancellor correctly held the allegation insufficient to state facts upon which relief could be granted pursuant to the detrimental-reliance theory. In evaluating the allegation, the Chancellor said he "had a difficult time finding detrimental reliance of any significant nature at all on the part of the Van Dykes." The problem is that the allegation amounts to no more than a conclusion which might be reached by a fact finder. It does not state facts. The general rule is that claims of promissory estoppel are questions for the fact finder. *See Country Corner Food & Drug, Inc.* v. *Reiss*, 22 Ark. App. 222, 737 S.W.2d 672 (1987); *Dickson* v. *Delhi Seed Co.*, 26 Ark. App. 83, 737 S.W.2d 382 (1988). Specifically, in both cases, the Court of Appeals upheld denials of motions to dismiss for failure to state a claim of detrimental reliance and allowed the question to go to the jury.

However, in the *Dickson* case, the complaint alleged specific facts such as dates of meetings between the parties, and particular secondary contracts entered into with other parties in reliance on the promise. Similarly, in the *Country Corner* case, the complaint specifically alleged a detailed oral agreement and the additional action of moving the complainant's family to a new town. In the case at bar, to say that the plaintiff "began pursuing information" does not inform the reader of any facts constituting expenditure of time and money. To overcome a motion to dismiss pursuant to Ark. R. Civ. P. 12(b)(6), the pleader must set forth more than mere conclusions. *Perrodin* v. *Rooker*, 322 Ark. 117, 908 S.W.2d 85 (1995); *Rabalais* v. *Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985). I respectfully dissent.

DUDLEY, J., joins.