(152 P.3d 670)
No. 96,118

Eva Ayalla, *Appellant,* v. Southridge Presbyterian Church, *Appellee.*

Opinion filed March 2, 2007.

*Eva Ayalla*, appellant pro se.

*William E. Hanna*, of Stinson Morrison Hecker LLP, of Kansas City, Missouri, for appellee.

Before GREEN, P.J., MARQUARDT, J., and BRAZIL, S.J.

GREEN, J.: Eva Ayalla appeals from a summary judgment granted in favor of Southridge Presbyterian Church in Ayalla's breach of contract claim. On appeal, Ayalla contends that the trial court erred in granting summary judgment because a genuine issue of material fact existed and because she entered into an enforceable contract with Southridge Presbyterian. We disagree, holding that any factual dispute was not material to Ayalla's claim. We further determine that the statute of frauds bars Ayalla's action. Accordingly, we affirm.

Ayalla sued Southridge Presbyterian for breach of contract. Ayalla set forth the following allegations in support of her claim.

Southridge Presbyterian, owner of a residential home, offered to sell it for the amount of $134,500. On April 25, 2005, Ayalla viewed the home. Ayalla made a written offer to purchase the home for $130,000 on April 26, 2005. The written offer was made on a residential real estate sale contract form furnished by Southridge Presbyterian's real estate agent, Jim Henderson. Ayalla gave Henderson a check for $1,000 as an earnest money deposit. Henderson later negotiated the closing costs with Mike Pyper, Ayalla's mortgage broker.

On April 28, 2005, Henderson orally notified Pyper that Southridge Presbyterian had accepted Ayalla's offer. Pyper left a message with Ayalla's nephew regarding Southridge Presbyterian's acceptance. The following day, Henderson orally told Ayalla personally of Southridge Presbyterian's acceptance. Henderson and Ayalla agreed to meet on May 1, 2005, to complete the paperwork, and Ayalla made plans to take that day off work. Based on Southridge Presbyterian's oral acceptance, Ayalla scheduled a home inspection to take place on May 2 or 3.

Ayalla and her friends and family gathered together on May 1 to celebrate. Before her scheduled meeting with Henderson, however, he called and told Ayalla that Southridge Presbyterian had accepted a higher offer of $142,500 from the Hamiltons.

Ayalla alleged that this event caused anguish and monetary damages in the amount of $12,900. Ayalla's damages calculation consisted of $12,500 for the loss of the benefit of her bargain, $200 for her lost wages on May 1, and $200 for her legal expenses. In her petition, Ayalla requested a preliminary injunction, specific performance of the contract, restitution based on Southridge Presbyterian's unjust enrichment, monetary damages in the amount of $12,900, and other such relief the court deemed appropriate.

Following the filing of Ayalla's petition, Southridge Presbyterian moved to dismiss Ayalla's action based on the statute of frauds. Ayalla alleged in her answer to Southridge Presbyterian's motion to dismiss that the sale contract, which was prepared and signed by Henderson on behalf of Southridge Presbyterian, was a sufficient memorandum to satisfy the statute of frauds. Ayalla further alleged that Southridge Presbyterian engaged in fraud when it failed to disclose Ayalla's accepted offer to the Hamiltons. The trial court denied the motion due to the existence of outstanding discovery.

Following the completion of discovery, Southridge Presbyterian moved for summary judgment based on the statute of frauds. Ayalla argued at the summary judgment hearing that the sale contract containing Henderson's signature satisfied the statute of frauds. Ayalla admitted that she never received a signed contract from Southridge Presbyterian but maintained that Henderson's oral ac-

ceptance on behalf of Southridge Presbyterian was sufficient to render her written offer an enforceable agreement. The trial court granted Southridge Presbyterian's motion, finding that no enforceable contract under the statute of frauds existed between the parties for the sale of the property.

*Did the trial court err in granting summary judgment in favor of Southridge Presbyterian?*

An appeal from a trial court's grant of summary judgment is governed by the following standard:

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citations omitted.]' " *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005).

" 'An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. The disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact. [Citation omitted.]' " *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000).

*Statute of Frauds*

Ayalla asserts two main theories in support of her argument regarding the statute of frauds: (1) that an enforceable agreement existed between herself and Southridge Presbyterian based on Henderson's oral acceptance of her written offer; and (2) that the sale contract, which was signed by Henderson, was sufficient to satisfy the statute of frauds.

Southridge Presbyterian contends that no written agreement existed between itself and Ayalla for the sale of the real estate; therefore, the statute of frauds precludes relief.

Enacted to prevent fraud and injustice, the statute of frauds requires that an enforceable contract for the sale of real estate be in writing and signed by the party against whom enforcement is sought. K.S.A. 33-106; *Bank of Alton v. Tanaka*, 247 Kan. 443, 452-53, 799 P.2d 1029 (1990). K.S.A. 33-106 provides the following:

"No action shall be brought whereby to charge a party upon . . . any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

Based on the statute of frauds, the trial court determined that no enforceable agreement existed between the parties. The court stated the following:

"[T]here is no evidence of any contract ever signed by anyone on behalf of Southridge Presbyterian Church to sell [Ayalla] that property. . . . [Henderson's] signature did not say that Southridge Presbyterian was making any specific offer to [Ayalla] to sell the property. All it did was say that this form contract which is a pre-printed form is a form approved by the Kansas City Regional Association of Realtors and that Remax Realty who had printed up this document had not changed it from the form contract that had been approved."

The trial court continued, "[t]he form [contract] was never signed by anyone representing Southridge Presbyterian. Accordingly[,] it has not been signed by the party against whom it is to be charged."

The first consideration is whether a genuine issue of material fact exists. Ayalla contends that triable issues of fact exist regarding whether the oral agreement between herself and Southridge Presbyterian is enforceable. Southridge Presbyterian asserts that the facts are undisputed.

Because Southridge Presbyterian has asserted the defense of the statute of frauds, the only material fact is whether the parties' alleged agreement was evidenced by a writing signed by Southridge Presbyterian. See K.S.A. 33-106. Ayalla admitted that Henderson's signature on the sale contract did not evidence Southridge Presbyterian's agreement to sell her the house. Moreover, Ayalla failed to show that Henderson was properly authorized by Southridge Presbyterian to act in the capacity of the seller. Further, Ayalla

conceded that she did not receive a signed contract from South-ridge Presbyterian. As a result, the only material fact is not in dispute.

Next, we turn to the question of whether Southridge Presbyterian was entitled to judgment as a matter of law. Because the issue of whether an alleged contract satisfies the statute of frauds involves the interpretation of a statute, this court's review is unlimited. *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006).

Citing *Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996), Ayalla first asserts that the oral acceptance of a written offer satisfies the statute of frauds. In *Van Dyke*, however, the written offer was made and signed by the party to be charged. 326 Ark. at 742-43. Here, the written offer was made by Ayalla and was never signed by Southridge Presbyterian. The essential point in the trial court's ruling was the absence of a memorandum signed by Southridge Presbyterian as the party against whom Ayalla was seeking enforcement of the alleged oral agreement. As a result, *Van Dyke* does not support Ayalla's position.

Ayalla also argues that parties may bind themselves to an enforceable contract even though they contemplate the future execution of a formal instrument as evidence of their agreement. In support of this argument, she cites four cases: *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 512 P.2d 379 (1973) (involving a written agreement signed by an agent of the party to be charged); *Short v. Sunflower Plastic Pipe, Inc.*, 210 Kan. 68, Syl. ¶¶ 6, 7, 500 P.2d 39 (1972) (holding that an oral employment contract would not become enforceable until it was reduced to writing and signed by the parties); *Middleton v. City of Emporia*, 106 Kan. 107, 186 Pac. 981 (1920) (involving a contract bid submitted by the party to be charged); *Willey v. Goulding*, 99 Kan. 323, 161 Pac. 611 (1916) (involving a memorandum signed by the party to be charged).

These cases do not aid Ayalla because they do not negate the requirement that an agreement for the sale of real estate must be evidenced by a writing signed by the party to be charged. See K.S.A. 33-106. Rather, the principle and cases simply indicate that

under some circumstances, parties may bind themselves to an enforceable contract before they reduce their agreement to a formal instrument. See, *e.g., Phillips & Easton Supply Co., Inc.*, 212 Kan. at 735. In two of the cases cited by Ayalla, this principle was applicable when the parties had created a signed memorandum of the agreement but contemplated the future creation of a more formal instrument. 212 Kan. at 731-32, 735; *Willey*, 99 Kan. at 325-26. In the third case cited by Ayalla, the statute of frauds was not applicable to the transaction. *Middleton*, 106 Kan. at 111. In the last case cited, the court held that the oral contract was *not* enforceable because it had not been reduced to a signed writing. *Short*, 210 Kan. 68, Syl. ¶¶ 6, 7.

Ayalla next argues that the sale contract, signed by Henderson, was sufficient to satisfy the statute of frauds. According to Ayalla, the sale contract satisfies the writing requirement, and Henderson's signature satisfies the requirement that the writing be signed by the party to be charged.

The trial court correctly explained to Ayalla that Henderson's signature on the sale contract did not satisfy the signature requirement of the statute of frauds. As the trial court noted, Henderson signed the sale contract in a box that was designed to certify the form as containing, without addition or deletion, the language approved by the Kansas City Regional Association of Realtors. Notably, Henderson signed the sale contract before he had even informed Southridge Presbyterian of Ayalla's offer. Henderson's signature was not meant to be an acceptance of Ayalla's offer but simply a certification that the form was an approved real estate contract form.

Ayalla also argues in her brief that her actions indicate a contract was formed and cites *Reznik v. McKee, Trustee*, 216 Kan. 659, 673, 534 P.2d 243 (1975), for the principle that a court may determine the existence and terms of a contract based on a combination of written instruments and the parties' actions in connection with the writings. The trial court ruled that no enforceable agreement existed between Ayalla and Southridge Presbyterian because the signature requirement of the statute of frauds had not been satisfied. This argument by Ayalla, therefore, does not advance her position

because it does not negate the absence of a writing signed by Southridge Presbyterian.

*Fraudulent Misrepresentation*

Ayalla contends that Southridge Presbyterian engaged in fraudulent misrepresentation and acted in bad faith by portraying her offer as a competing bid to the Hamiltons rather than as an accepted offer. Ayalla argues that Southridge Presbyterian's actions violated the Kansas Consumer Protection Act, which prohibits suppliers from engaging in deceptive acts or practices in connection with consumer transactions. K.S.A. 50-626(a).

Fraud must be established by clear and convincing evidence and is never presumed. An action for fraud requires the following elements: "an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or with reckless disregard for the truth, upon which another party justifiably relies and acts to his or her detriment." *Crandall v. Grbic*, 36 Kan. App. 2d 179, Syl. ¶ 3, 138 P.3d 365 (2006).

"[T]he existence of fraud is ordinarily a question of fact and [an appellate] court's review is limited to determining whether the trial court's findings are supported by substantial competent evidence. [Citation omitted.]" *Stauth v. Brown*, 241 Kan. 1, 8, 734 P.2d 1063 (1987).

The trial court did not specifically refer to Ayalla's allegation of fraud when ruling on Southridge Presbyterian's motion for summary judgment. A review of the record, however, indicates that Ayalla's claim is fatally flawed for two reasons. First, although Ayalla mentions fraud in her answer to Southridge Presbyterian's motion to dismiss, she failed to assert a claim of fraud as a separate theory of recovery in her petition filed with the trial court. Notwithstanding the liberality of the Kansas Rules of Civil Procedure, they require certain matters to be set forth with particularity. Fraud is one of them. K.S.A. 60-209(b). The circumstances constituting fraud or mistake shall be stated with particularity.

Second, Ayalla seems to be attempting to assert a cause of action for Southridge Presbyterian's alleged fraud perpetrated upon the actual buyers of the house. Ayalla's claim is that it was fraudulent

for Southridge Presbyterian to portray her offer as a competing bid to the Hamiltons rather than as an accepted offer. This alleged misrepresentation was made to the Hamiltons, not to Ayalla; therefore, Ayalla could not have relied on the misrepresentation. Because Ayalla could not have relied on the alleged misrepresentation, she cannot state a cause of action for fraud. *Crandall,* 36 Kan. App. 2d 179, Syl. ¶ 3. In addition, because Southridge Presbyterian did not enter into an enforceable agreement with Ayalla, it was not fraudulent for Southridge Presbyterian to portray Ayalla's offer as a competing bid.

### Equitable Relief

Citing *Cooper v. RE-MAX Wyandotte County Real Estate, Inc.,* 241 Kan. 281, 291, 736 P.2d 900 (1987), Southridge Presbyterian contends that Ayalla is not entitled to equitable relief, although Ayalla has not specifically asserted a claim for equitable relief. Southridge Presbyterian argues that the doctrine of promissory estoppel does not require enforcement of the oral agreement because no relationship of trust or confidence existed between the parties and it did not misrepresent the existing facts to Ayalla.

The trial court explained to Ayalla that she was not entitled to equitable relief:

"[T]here was no large investment made by you during the time period that you allege transpired between your orally being told the contract had been accepted and your orally being told that the property had been sold to someone else. So there is not a gross injustice that would result according to any evidence that you have supplied under the rules for considering a summary judgment motion in Kansas."

Despite the writing requirement for the sale of real estate, equity sometimes justifies the enforcement of a real estate contract that violates the statute of frauds. When one party relies on an oral agreement to his or her detriment and gross injustice would result if the agreement is not enforced, an oral contract may be removed from the statute of frauds. *Tanaka,* 247 Kan. at 452; see also *Cooper,* 241 Kan. at 291 (explaining that a real estate contract that is unenforceable based on the statute of frauds may be specifically enforced when the party seeking enforcement so changed her po-

sition in reasonable reliance on the contract that "injustice can be avoided only by specific enforcement"). In the absence of compelling equitable considerations, however, an oral agreement for the sale of real estate is unenforceable under the statute of frauds. *Tanaka*, 247 Kan. at 453.

Part performance is considered a compelling equitable consideration that may justify removal of an oral contract from the operation of the statute of frauds. Part performance often involves the delivery of possession of the real estate to the purchaser and improvement of the real estate by the purchaser. Part performance will only remove the statute of frauds as a defense to an oral contract when the performing party cannot be adequately compensated with money. 247 Kan. at 453.

The doctrine of promissory estoppel may be invoked to enforce an oral agreement when the evidence demonstrates the following:

"(1) The promisor reasonably expected the promisee to act in reliance on the promise, (2) the promisee acted as could reasonably be expected in relying on the promise, and (3) a refusal of the court to enforce the promise would sanction the perpetration of fraud or result in other injustice. [Citation omitted.]" *Templeton v. Kansas Parole Board*, 27 Kan. App. 2d 471, 474-75, 6 P.3d 910 (2000).

In her petition, Ayalla suggests part performance justifies removal of the alleged contract from the operation of the statute of frauds. Ayalla does not expressly argue that the doctrines of promissory estoppel or part performance are applicable to her case on appeal. An issue not briefed by the appellant is deemed waived or abandoned. *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 444, 109 P.3d 1146 (2005).

Even if Ayalla were attempting to assert a claim for equitable relief, the doctrines of promissory estoppel and part performance were not applicable to her case. Ayalla did not take possession of or make improvements to the real estate. Nor did Ayalla specify any similar type of part performance. Therefore, the doctrine of part performance was not applicable. Ayalla similarly cannot satisfy the requirements of promissory estoppel because her reliance on Henderson's oral acceptance was not reasonable. Ayalla had not received written confirmation of Southridge Presbyterian's commitment to selling her the house. Ayalla stated that "[m]ost persons

know when buying a house a tangible document is always necessary to proceed with your mortgage loan." This statement indicates that Ayalla realized she would need a signed writing from Southridge Presbyterian before she would be able to buy the home. In summary, Ayalla has not demonstrated that a gross injustice will result if the alleged agreement is not specifically enforced. Equity does not require enforcement of the alleged oral contract in this case.

*Should this court assess costs and attorney fees against Ayalla?*

Under Supreme Court Rule 7.07(c) (2006 Kan. Ct. R. Annot. 57), Southridge Presbyterian requests that this court impose sanctions against Ayalla for pursuing this appeal. According to Southridge Presbyterian, Ayalla's appeal is frivolous and without factual or legal support. Noting that Ayalla has filed a suit against Henderson, Southridge Presbyterian believes sanctions are necessary to deter Ayalla from pursuing additional baseless suits in the future. Southridge Presbyterian asserts that it incurred attorney fees of $3,180 and a reproduction cost of $85.50 for its brief.

Supreme Court Rule 7.07(c) provides in relevant part the following: "If the appellate court finds that an appeal has been taken frivolously, or only for purposes of harassment or delay, it may assess against an appellant . . . the cost of reproduction of the appellee's brief and a reasonable attorney fee for the appellee's counsel."

The record does not indicate that Ayalla pursued this appeal frivolously or for the purposes of harassment or delay. Ayalla is a pro se appellant. The record indicates that Ayalla has attempted to familiarize herself with the relevant legal principles, and she has cited cases that she argues support her position. In addition, the trial court invited Ayalla to pursue her case in the appellate courts, specifically stating that "[t]here are appellate courts in our state. You are welcome to present the issue to them and see if they believe that I am wrong on the law." For these reasons, sanctions are not appropriate in this case.

Affirmed.