(253 P.3d 781)
No. 103,994

MARGARET L. SIGG, *Appellant*, v. DANIEL COLTRANE and TANYA COLTRANE, *Appellees*.

Opinion filed December 10, 2010.

*Mark Sevart*, of Derby, for appellant.

*Steven B. Doering*, of Law Offices of Steven B. Doering, of Garnett, for appellees.

Before PIERRON, P.J., Green and MARQUARDT, JJ.

GREEN, J.: Margaret Sigg appeals from a judgment of the trial court denying her motion for summary judgment on her action for specific performance of a contract to purchase real estate. Sigg offered and made a down payment of $27,500 to Daniel and Tanya Coltrane on the purchase of certain land. The Coltranes later sold the land to someone other than Sigg. On appeal, Sigg raises the following questions: Is an e-mail sent by the party to be charged sufficient to satisfy the requirements of the statute of frauds and did the trial court err in denying her motion for summary judgment?

It is apparent that none of the separate writings in question was signed by the party [the Coltranes] to be charged in the action and, therefore, the alleged agreement set forth in the separate writings is within the statute of frauds and, hence, unenforceable. Accordingly, we affirm.

In May 2008, the Coltranes put their land located in Iola, Kansas, up for sale. Sigg was interested in purchasing the property and hired Charles Sellman to be her real estate agent.

On January 16, 2009, Tanya Coltrane sent an e-mail to Laura Sellman, the daughter of Charles Sellman, with an attached document. The attached document, which was drafted by Daniel Coltrane, was titled as an offer to purchase real estate. The document contained language stating that it was an "offer to purchase [the Coltranes'] real estate" and that the Coltranes had "the right to reject any and all bids." Sigg signed the document and deposited 10 percent of the purchase price in the Coltranes' bank account.

On January 30, 2009, the Coltranes entered into a contract to sell their real estate to Douglas Stickler, who was renting the land from the Coltranes at that time. The Coltranes rejected Sigg's offer to purchase the real estate and returned her deposit. Sigg filed an action contending that she had entered into a contract to purchase the Coltranes' land and demanding specific performance of the sale of the property. Later, Sigg moved for summary judgment, which was denied by the trial court. Instead, the trial court granted the Coltranes' motion for summary judgment. The trial court determined that Sigg's action was barred by the statute of frauds. Moreover, the trial court determined that the Coltranes never accepted Sigg's offer to purchase the real estate.

*Is an e-mail sent by the party to be charged sufficient to satisfy the requirements of the statute of frauds?*

On appeal, Sigg first argues that an e-mail sent by the Coltranes was sufficient to satisfy the statute of frauds. Sigg relies on the Uniform Electronic Transactions Act, K.S.A. 16-1601 *et seq.*, in support of her argument. Sigg did not raise this issue before the trial court. Issues not raised before the trial court cannot be raised on appeal. *In re Care & Treatment of Miller,* 289 Kan. 218, 224-25, 210 P.3d 625 (2009).

There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determi-

native of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).

We will address this new legal authority under exception (1) previously mentioned.

### SUMMARY JUDGMENT

*Standard of Review*

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009).

Neither party disputes that the alleged agreement between Sigg and the Coltranes must satisfy the statute of frauds to be a valid contract. Indeed, the statute of frauds applies to all contracts "for the sale of lands, tenements, or hereditaments, or any interest in or concerning them." See K.S.A. 33-106.

Quoting *Walton v. Piqua State Bank*, 204 Kan. 741, 747, 466 P.2d 316 (1970), this court in *Kenby Oil Co. v. Lange*, 30 Kan. App. 2d 439, 442, 42 P.3d 201 (2002), outlined the requirements to satisfy the statute of frauds as follows:

" ' "A Memorandum, in order to be enforceable under the statue of frauds, may be any document or writing, formal or informal, signed by the party to be charged

or by his lawfully authorized agent, which states with reasonable certainty (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, (b) the land or other subject matter to which the contract relates, and (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made." ' [Citation omitted.]"

See Restatement (Second) of Contracts § 131 (1979).

Our Supreme Court has recently held that the statute of frauds requires that only the material terms of a contract are to be stated with reasonable certainty. See *Botkin v. Security State Bank*, 281 Kan. 243, 250, 130 P.3d 92 (2006); see also *Federal Deposit Insurance Corp. v. Neitzel*, 769 F. Supp. 346, 349 (D. Kan. 1991) (citing *Barnhart v. McKinney*, 235 Kan. 511, 524, 682 P.2d 112 [1984]) (material terms need only be stated with reasonable certainty). Furthermore, for the purpose of satisfying the statute of frauds, separate writings may be construed together in order to determine whether there is sufficient written agreement upon which to base an enforceable contract. *Young v. Hefton*, 38 Kan. App. 2d 846, 856, 173 P.3d 671 (2007).

In K.S.A. 33-106, we find the following:

"No action shall be brought . . . upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing *and signed by the party to be charged therewith*, or some other person thereunto by him or her lawfully authorized in writing." (Emphasis added.)

Based on the previously mentioned statute and case law, a memorandum or separate writings, though signed by only one party, will bind that party if he or she is "the party to be charged therewith," if the identity of the other contracting party is clear.

An important finding of fact made by the trial court is number 22, reading as follows: "There is no document signed by either of the defendants to sell the property that is the subject of this lawsuit." Moreover, this finding of fact is supported by substantial competent evidence. Based on this, the trial court determined that Sigg's action was barred by K.S.A. 33-106, the statute of frauds,

because there was no document signed by the Coltranes, "the party to be charged."

As the Coltranes point out in their brief, there are at most four "writings" that may be construed, either separately or collectively, as an agreement in this case:

1. An e-mail cover sheet to the daughter of Sigg's agent;

2. The attachment to the e-mail, denominated "Offer to Purchase Real Estate" later signed by Sigg;

3. A check for earnest money signed by Sigg and deposited into the Coltranes' bank account without their signatures; and

4. An unsigned handwritten note that accompanied the signed "Offer to Purchase Real Estate."

Here, the various writings which established the contractual relationship between the parties were not signed by the Coltranes.

For example, the e-mail cover sheet states that it is "Sent by Coltrane@cox.net." It does not contain the typed name of either Daniel or Tanya Coltrane. Next, the "Offer to Purchase Real Estate" is addressed to the Coltranes. Moreover, it is signed only by Sigg. The Coltranes' signatures do not appear on the earnest money check furnished by Sigg and deposited into the Coltrane's bank account. Finally, Sigg does not contend that the unsigned note, found not to be material by the trial court, was signed by the Coltranes.

Sigg relies on *Clark v. Larkin*, 172 Kan. 284, Syl. ¶ 2, 239 P.2d 970 (1952), and *Vining v. Ledgerwood*, 162 Kan. 380, 176 P.2d 560 (1947), to show that her agreement to purchase the Coltranes' land is not violative of the statute of frauds. Sigg's reliance on these two cases is misplaced.

For example, in *Clark*, the reneging buyer's memorandum written on his $1,000 down payment check read: "To apply on 405 East 'A' @ $17,000.00 bal. of $7,000.00 to be paid on approval & $9,000 to be paid in 5 years @ 5%." 172 Kan. at 285. The buyer stopped payment on his check and pleaded the statute of frauds as a bar to the oral contract to purchase the real estate. Our Supreme Court held that the check was a written memorandum signed by the party to be charged (the buyer) and adequately identified the

parties, property, price, and every material point except the location of the property. Because this was the only real property owned by the sellers, with the previously mentioned description, the court determined that this omission was cured. As a result, this case is distinguishable from the present case because the party sought to be charged had signed the written memorandum.

In *Vining*, an offer of sale was made to the plaintiff (buyer) that was signed by the defendant (seller), the party to be charged. The court held that the separate writings were sufficient to take the matter out of the statute of frauds. Although two documents were involved in *Vining*, one of them was signed by the party sought to be charged. Here, while two or more documents were involved, *none* was signed by the Coltranes, the party to be charged.

Furthermore, as the Coltranes point out in their brief, the case of *Ayalla v. Southridge Presbyterian Church*, 37 Kan. App. 2d 312, 152 P.3d 670 (2007), is more similar to Sigg's case than *Clark* and *Vining*. *Ayalla* leaves no doubt that a memorandum or separate writings will be insufficient to take an agreement out of the statute of frauds if it is not signed by the party to be charged:

"Citing *Van Dyke v. Glover*, 326 Ark. 736 (1996), Ayalla first asserts that the oral acceptance of a written offer satisfies the statute of frauds. In *Van Dyke*, however, the written offer was made and signed by the party to be charged. 326 Ark. at 742-43. *Here, the written offer was made by Ayalla and was never signed by Southridge Presbyterian*. The essential point in the trial court's ruling was the absence of a memorandum signed by Southridge Presbyterian as the party against whom Ayalla was seeking enforcement of the alleged oral agreement. As a result, *Van Dyke* does not support Ayalla's position.

"Ayalla also argues that parties may bind themselves to an enforceable contract even though they contemplate the future execution of a formal instrument as evidence of their agreement. In support of this argument, she cites four cases: *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 512 P.2d 379 (1973) (involving a written agreement signed by an agent of the party charged); *Short v. Sunflower Plastic Pipe, Inc.*, 210 Kan. 68, Syl. ¶¶ 6, 7, 500 P.2d 39 (1972) (holding that an oral employment contract would not become enforceable until it was reduced to writing and signed by the parties); *Middleton v. City of Emporia*, 106 Kan. 107, 186 Pac. 981 (1920) (involving a contract bid submitted by the party to be charged); *Willey v. Goulding*, 99 Kan. 323, 161 Pac. 611 (1916) (involving a memorandum signed by the party to be charged).

"*These cases do not aid Ayalla because they do not negate the requirement that an agreement for the sale of real estate must be evidenced by a writing signed by*

*the party to be charged.* See K.S.A. 33-106." (Emphasis added.) 37 Kan. App. 2d at 317.

The Sigg's agreement clearly falls within the ambit of K.S.A. 33-106, and there is no instrument in writing signed by the Coltranes that would take this agreement out of the statute of frauds.

Finally, for the first time on appeal, Sigg attempts to rely upon the Uniform Electronic Transactions Act, K.S.A. 16-1601 *et seq.*, to supply the missing signatures of the parties to be charged (the Coltranes). As stated earlier, Sigg did not raise this issue before the trial court.

K.S.A. 16-1602(i) defines the term electronic signature as follows: "(1) 'Electronic signature' means an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."

Sigg cites no authority for her conclusion that the Coltranes' electronically drafting and e-mailing a document constitutes an electronic signature as contemplated by the Act. There is no evidence in the record that either the e-mail cover sheet or the "Offer to Purchase Real Estate" attached to it bears the electronic signature of either Daniel or Tanya Coltrane as defined by the Act. Instead, Sigg's position would require us to endorse the proposition that because the "Offer to Purchase Real Estate" was sent electronically to the daughter of Sigg's agent that that alone constitutes a signature. This is simply not the law under K.S.A. 16-1601 *et seq.*

Moreover, there is no evidence that this transaction meets the requirements of K.S.A. 16-1605(b): "This act applies only to transactions between parties each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties conduct." There is absolutely nothing in the record that indicates that Sigg and the Coltranes agreed to conduct their transactions by electronic means. In fact, there is nothing in the record that establishes any actual agreement existed between Sigg and the Coltranes.

Because the separate writings which established the contractual relationship between Sigg and the Coltranes were not signed by

the Coltranes, the alleged agreement set forth in those separate writings is within the statue of frauds and, therefore, unenforceable.

There are other issues raised in the briefs which have received careful consideration, but we deem it unnecessary to discuss them in this opinion.

Affirmed.