No. 122,833

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEVIE KUCHARSKI-BERGER,
*Appellant*,

v.

HILL'S PET NUTRITION, INC.,
*Appellee*.

SYLLABUS BY THE COURT

1.

The court's role in reviewing a motion to dismiss for failure to state a claim is to determine whether the petition sufficiently apprises the defendant of the facts upon which the plaintiff claims to be entitled to relief, not whether the plaintiff can prove them or whether they have merit. The defenses to the claims are not the court's concern at this stage unless they require dismissal as a matter of law.

2.

Motions to dismiss for failure to state a claim are limited to a review of the pleadings while motions for summary judgment consider all the facts disclosed during discovery. Litigants are therefore cautioned against conflating cases challenging the grant or denial of summary judgment with the standard required for pleadings under our liberal notice pleading scheme.

3.

Whether a deceptive act or practice has occurred under the KCPA is not a question of law for the court, but a question of fact for the jury to decide.

1

4.

While claims brought under the KCPA sound largely in fraud, a plaintiff is not required to prove a critical element of a common-law fraud action—the intent to defraud.

5.

Conscious parallelism is how firms in a concentrated market might share monopoly power—setting their prices at a prefixed maximizing, supracompetitive level by recognizing their shared economic interests and their interdependence on price and output decisions. The uniform conduct of pricing by competitors permits a court to *infer* the existence of a conspiracy between those competitors.

6.

Any showing by a plaintiff that tends to exclude the possibility of independent action can qualify as a plus factor. If a benign explanation of a defendant's action is equally plausible or more plausible than a collusive explanation, the action cannot constitute a plus factor. On the other hand, evidence that a defendant's behavior would not be reasonable or explicable (i.e., not in its legitimate economic self-interest) if it were not conspiring to fix prices can constitute a plus factor.

7.

A claim for unjust enrichment is an equitable claim, and generally, an equitable remedy is unavailable when an adequate remedy exists under another legal claim.

8.

At the pleading stage, a plaintiff may allege both unjust enrichment and a legal claim for the same behavior, even though the plaintiff cannot ultimately recover under both theories.

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Opinion filed August 20, 2021. Reversed and remanded.

*James P. Frickleton*, of Bartimus Frickleton Robertson Rader, P.C., of Leawood, *Kimberly J. Johnson* and *Wade H. Tomlinson*, pro hac vice, of Pope McGlamry, PC, of Atlanta, Georgia, and *Edward J. Coyne III*, pro hac vice, of Ward and Smith, P.A., of Wilmington, Delaware, for appellant.

*Jennifer B. Wieland*, of Berkowitz Oliver LLP, of Kansas City, Missouri, *Thomas P. Schult*, pro hac vice, of the same firm, *Yaira Dubin* and *Hannah Y. Chanoine*, pro hac vice, of O'Melveny & Myers LLP, of New York, New York, *Richard B. Goetz*, pro hac vice, of the same firm, of Los Angeles, California, and *Michael F. Tubach*, pro hac vice, of the same firm, of San Francisco, California, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.

ARNOLD-BURGER, C.J.:  Stevie Kucharski-Berger bought prescription pet food manufactured by Hill's Pet Nutrition, Inc. (Hill's), on the advice of and with a required prescription from her veterinarian. After learning that Hill's prescription pet food has no medicine or drug, that no prescription is legally required to purchase it, and that it is not tested and approved for medicinal purposes by the Food and Drug Administration (FDA), Kucharski-Berger sued Hill's alleging that Hill's and other pet food manufacturers conspired to monopolize the prescription pet food market and to artificially inflate prices by self-imposing the prescription requirement. Her petition alleges violations of the Kansas Restraint of Trade Act (KRTA) and the Kansas Consumer Protection Act (KCPA). She also raised an unjust enrichment claim against Hill's.

The district court dismissed Kucharski-Berger's petition, holding that she failed to state a claim upon which relief could be granted. We reverse and remand for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

In February 2019, Kucharski-Berger filed a petition in Johnson County alleging that Hill's, along with other pet food manufacturers, created and enforced an unnecessary prescription requirement for select pet food which misleads reasonable consumers and violates Kansas law. The other pet food companies alleged to be involved in the case, although not named parties, include Mars Petcare US, Inc. (Mars), Royal Canin U.S.A., Inc. (Royal Canin), Nestle Purina Petcare Company (Purina), PetSmart, Inc. (PetSmart), Medical Management International, Inc. d/b/a Banfield Pet Hospital (Banfield), BluePearl Vet, LLC (Blue Pearl), and VCA Inc. (VCA).

In broad terms, which will be more fully discussed below, Kucharski-Berger alleged that prescription pet food manufacturers "combined and conspired with pet food retailers and veterinary clinics . . . to communicate [a] false and misleading message" that prescription pet food offered benefits over nonprescription pet food justifying its higher price. She asserts that prescription pet food is largely the same as nonprescription pet food and that any differences in similar products "are not sufficient to justify one product being sold by prescription for a significantly higher price." For example, "Hill's Prescription Diet d/d Canine Skin Support Potato & Duck Dry Dog Food currently sells for $4.00 per pound and Hill's Science Diet Adult Sensitive Stomach & Skin Dry Dog Food sells for $1.65 per pound" and has a 65% overlap in ingredients.

According to the petition, federal and Kansas law do not require prescription pet food to be sold with a prescription from a veterinarian. Similarly, none of the prescription pet food bought by Kucharski-Berger contains a drug, nor has it been submitted to the FDA for review, analysis, or approval.

As Kucharski-Berger states it, reasonable consumers are willing to pay a premium for prescription pet food because a reasonable consumer would expect that pet food that

requires a prescription from a veterinarian as a condition of purchase has been approved by the FDA. When purchasing the prescription pet food, a consumer must either buy it directly from the veterinarian who prescribes it or take the prescription to a business that sells the food, such as Banfield, Blue Pearl, VCA, or a PetSmart store with a Banfield on-site. By imposing a requirement of a prescription, Hill's and other manufacturers can sell prescription pet food at "excessive, inflated prices."

Kucharski-Berger alleges that Hill's managed to maintain the high prices due to agreements between the pet food manufacturers, distributors, and veterinarians. As a result of their agreements, Hill's, Mars, and Purina "created a separate and distinct market for Prescription Pet Food, which had not previously existed, which enabled them to sell Prescription Pet Food at anticompetitive, enhanced prices, and which they have dominated."

Kucharski-Berger noted that Kansas defines "'drug'" as "'articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in human or other animals,' K.S.A. § 65-1626(t)(2)" and defines "'[p]rescription-only drug'" as "'any drug whether intended for use by human or animal, required by federal or state law, including 21 U.S.C. § 353, to be dispensed only pursuant to a written or oral prescription or order of a practitioner or is restricted to use by practitioners only,' K.S.A. § 65-1626(eee)." Given her assertion that prescription pet food is a drug, Kucharski-Berger asserts that the prescription pet food must be registered with the FDA—which it is not.

Kucharski-Berger claimed that Hill's actions caused her injury because she bought Hill's prescription dog food at a higher price because she believed the prescription dog food contained some medicine or drug which was intended to treat a specific disease or health problem.

5

As to Kucharski-Berger's claims under the KCPA, the district court held that Hill's self-imposed prescription requirement was not deceptive, and Hill's did not do it to take advantage of consumers because the FDA "expressly wants veterinarians to provide direction and supervision to pet owners" who are purchasing prescription pet food.

The district court also found that Kucharski-Berger failed to plead the fraud with sufficient particularity. The court also found that when Kucharski-Berger's veterinarian advised her to purchase the prescription pet food, it constituted an intervening event that precluded her from properly pleading causation against Hill's. The court noted that Kucharski-Berger "purchased the product after receiving information from a nonparty– her veterinarian. Accordingly, [she] could not have relied, as pled, on statements or claims from Defendant regarding her decision to initially purchase the product."

The district court dismissed Kucharski-Berger's claim under an unjust enrichment theory because the claim was seeking relief for the same underlying conduct as her KCPA claim and, generally, an equitable remedy is unavailable if there is a possible adequate remedy at law.

The district court dismissed Kucharski-Berger's claim that Hill's and the other companies formed a trust to fix prices because she failed to plead facts that would show that Hill's and the other nonparties created a trust that manipulated the market. Instead, the court reasoned that Kucharski-Berger was merely describing an "open and free market."

Similarly, the district court dismissed Kucharski-Berger's claim that Hill's and the other nonparties conspired to create a monopoly. The court reasoned that she provided nothing to support her speculation that Hill's and the other nonparties made agreements or combinations to restrict market access to other competitors. The court noted that Kucharski-Berger's theory would lead to unintended results because "any time a new

6

producer of a product failed to successfully gain market share, an action could be brought against the top . . . companies for violations of the KRTA."

Kucharski-Berger timely appealed the district court's decision.

ANALYSIS

I.      OUR STANDARD OF REVIEW IS UNLIMITED.

Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review. *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 784, 450 P.3d 330 (2019). The appellate court will view the well-pleaded facts in a light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state *any* claim upon which relief can be granted, then dismissal is improper. Dismissal is proper only when the allegations in the petition clearly demonstrate the plaintiff does not have a claim. *Steckline Communications, Inc. v. Journal Broadcast Group of Kansas, Inc.*, 305 Kan. 761, 767-68, 388 P.3d 84 (2017); see K.S.A. 2020 Supp. 60-212(b)(6). As a result, we need not give any deference to the district court's decision and will not seek to outline our agreement or disagreement with any of its findings. Hill's has adopted most of the district court's positions as its own, and we will address them as such.

II.     WE DISCUSS THE RULES RELATING TO NOTICE PLEADING.

Kansas is a notice pleading state. Generally, a petition needs only "(1) [a] short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for relief sought." K.S.A. 2020 Supp. 60-208(a). Courts are to construe pleadings "so as to do justice." K.S.A. 2020 Supp. 60-208(e). A legal theory of relief need not be detailed, so long as the petition apprises the defendant of the facts upon which the

7

plaintiff claims to be entitled to relief. *Beck v. Kansas Adult Authority*, 241 Kan. 13, 25, 735 P.2d 222 (1987).

A court cannot resolve factual disputes on a motion to dismiss for failure to state a claim. Under notice pleading, the petition is not intended to govern the entire course of the case. Instead, the pretrial order determines the ultimate legal issues and theories of the case. Because a party typically moves to dismiss early in a case when many facts have not yet been discovered and legal theories may be in flux, "[j]udicial skepticism" must be exercised. *Rector v. Tatham*, 287 Kan. 230, 232, 196 P.3d 364 (2008); see *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely'").

Because the district court dismissed this case at the pleading stage, the question before this court is whether Kucharski-Berger's petition met the requirements of K.S.A. 2020 Supp. 60-208(a)—a short and plain statement of the claim showing that she was entitled to relief and a demand for the relief sought. When deciding the issue, this court looks at the pleading in a light most favorable to Kucharski-Berger and assumes that her alleged facts and reasonable inferences arising from those facts are true. See *Steckline Communications, Inc.*, 305 Kan. at 767-68. In doing so, this court is not required "to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself." *Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, 413-14, 479 P.2d 875 (1971).

With that in mind, we will examine each of Kucharski-Berger's four listed causes of action.

III.   THE DISTRICT COURT ERRED BY DISMISSING KUCHARSKI-BERGER'S KCPA CLAIM.

A. *Kucharski-Berger's claim under the KCPA*

Under K.S.A. 2020 Supp. 50-626(a) of the KCPA, "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." So to bring a claim under K.S.A. 2020 Supp. 50-626, Kucharski-Berger had to allege that Hill's was "engage[d] in any deceptive act or practice in connection with a consumer transaction." An act may be found deceptive regardless of whether "any consumer has in fact been misled." K.S.A. 2020 Supp. 50-626(b). The consumer must also prove that they were "aggrieved by" the alleged violation of the act. K.S.A. 50-634(a). The statute then provides a nonexclusive list of deceptive acts and practices—which are "declared to be a violation" of the act. K.S.A. 2020 Supp. 50-626(b). Those relevant to Kucharski-Berger's claim are:

"(1) Representations made knowingly or with reason to know that:

(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

. . . .

(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;

. . . .

(G) use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist." K.S.A. 2020 Supp. 50-626(b)(1).

To establish her claim, Kucharski-Berger alleged that Hill's violated K.S.A. 2020 Supp. 50-626 of the KCPA by engaging in

9

"deceptive acts and practices in connection with the sale and advertisement of Prescription Pet Food in trade or commerce in the State of Kansas by misrepresenting and marketing and selling Prescription Pet Food through a knowingly deceptive, misleading, and self-imposed prescription requirement having no legal basis or mandate. In so doing, Hill's has represented that Prescription Pet Food has sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that it does not have; represented that Prescription Pet Food is of particular standard, quality, grade, style or model, when Prescription Pet Food is of another that differs materially from Hill's representation; and engaged in the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact regarding Prescription Pet Food, specifically that neither federal, state, nor local law requires the use of a prescription, and that Prescription Pet Food has not been subjected to FDA testing, review, and approval, and does not comply with the terms and provisions of the [Federal Food, Drug, and Cosmetic Act (FD&C)] Act."

B. *Kucharski-Berger's factual support for her allegation that Hill's prescription requirement was deceptive and in violation of the KCPA*

According to the petition, Hill's began selling Prescription Diet pet food through veterinarians in the 1960s. In the 1980s, Hill's began providing veterinarians with prescription pads as a part of its *marketing* effort. Prescription Diet pet food is sold only by prescribing veterinarians and retailers who fill the veterinary prescriptions. Prescription pet food in general is more expensive and is marketed and sold only to pet owners who have a veterinarian's prescription for that pet food. The parties agree that neither federal nor Kansas law requires prescription pet food be sold only with a prescription from a veterinarian. The parties agree that prescription pet food does not have any drugs subject to FDA review, analysis, or approval. Hill's has always known these two essential facts.

In support of her claim, she alleges:

10

"By requiring a prescription from a veterinarian as a pre-condition to the purchase of their Prescription Pet Food, Hill's and its co-conspirators misrepresent Prescription Pet Food to be: (a) a substance medically necessary to health; (b) a drug, medicine, or other controlled ingredient; (c) a substance that has been evaluated by the FDA as a drug; (d) a substance as to which the manufacturer's representations regarding intended uses and effects have been evaluated by the FDA; and (e) a substance legally required to be sold by prescription."

She then asserts:

"The intended purpose and effect of the prescription requirement has been to enable Hill's and its co-conspirators to market and sell Prescription Pet Food at excessive, inflated prices above the price of non-prescription pet food making substantially similar treatment claims. The supra-competitive price premium for Prescription Pet Food is not cost-justified and is the intended result of the false, deceptive, and misleading prescription requirement imposed by Hill's and its co-conspirators."

### C. Hill's argument that the facts alleged do not support a claim of deception

Hill's argues that its prescription pet food, the prescription requirement, and the marketing surrounding it was not deceptive because it was following FDA guidance in requiring a prescription. The guidance it alleges it was following is central to its motion to dismiss.

We pause to discuss the FDA Compliance Policy Guide which the FDA issued in April 2016 (Sec. 690.150 Labeling and Marketing of Dog and Cat Food Diets Intended to Diagnose, Cure, Mitigate, Treat, or Prevent Diseases) (CPG) upon which Hill's relies. https://www.fda.gov/media/83998/download. Hill's in essence asserts that this CPG represents a complete defense as a matter of law to any claim of deception.

11

The CPG begins by noting that it considers animal drugs "unsafe unless they have an approved New Animal Drug Application" or an equivalent approval from the FDA. CPG, 4. It also explains that when pet food companies state that their food is intended to treat or prevent disease, the food is considered to be a drug under federal law. CPG, 3. It then notes that "all drug manufacturers [are required to] register and list drugs with FDA." CPG, 4. "Drugs that are manufactured in an unregistered facility, or are not drug listed, are misbranded" under the Federal Food, Drug, and Cosmetic Act (FD&C Act). CPG, 4.

The FDA pointed out that "most dog and cat food products that claim on their labels or in their labeling or other manufacturer communications to treat or prevent disease are not approved new animal drugs" and the manufacturers have disregarded drug registration requirements or good manufacturing practices. CPG, 4. But the FDA acknowledged that in the past it had exercised discretion by not enforcing the requirements so long as the manufacturers met certain requirements, including distribution of the product though licensed veterinarians. CPG, 4. The FDA reasoned that some of its concerns are lessened by requiring such products to be sold through a licensed veterinarian, such as a pet owner misinterpreting the purpose of a product. As the FDA noted, because prescription pet foods "have not been evaluated for safety and efficacy, veterinary oversight is especially important to provide periodic assessment of how the animal is reacting to the diet." CPG, 5.

To that end, the FDA said that it was "less likely to initiate enforcement action against dog and cat food products intended to be fed as the pet's sole diet that claim to treat or prevent disease" when *all* of 11 factors were present. CPG, 7. Included within the factors was the requirement that the manufacturer only made the product available to consumers through licensed veterinarians or through individuals purchasing the product under veterinarian direction. CPG, 7.

12

In short, if a pet food manufacturer markets their food to treat or prevent disease the FDA considers it a drug which must be registered with the FDA. If the manufacturer does not comply with this requirement, the FDA considers their dog food misbranded, adulterated, and unsafe. Manufacturers of pet food have routinely disregarded this requirement. The FDA has suggested that it is "less likely" that it will act against these manufacturers if they distribute their products through licensed veterinarians and adhere to several other conditions.

The CPG does not require, or even suggest, that pet food manufacturers label their products as prescription only or any derivative of such a label. Instead, it merely says that the FDA is less likely to enforce violations of the FD&C Act if manufacturers do not sell their pet food directly to consumers and instead have a veterinarian intermediary to make sure the pet is not harmed by the food. CPG, 5, 7. To interpret this as authorizing or mandating Hill's prescription requirement "wrongly equates regulatory forbearance with regulatory authorization." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019).

> "To be sure, if pet food intended to treat or prevent disease is purchased from or under the direction of a licensed veterinarian, the FDA is less likely to initiate an enforcement action based on the lack of an approved new animal drug application—*provided*, however, that the other 10 factors are also present. And 'less likely' does not mean 'will not'; it certainly doesn't signal authorization." 934 F.3d at 738.

A reasonable reading of the CPG could lead one to conclude that if Hill's were to sell its prescription dog food without veterinarian authorization, the FDA would take enforcement action because it is contrary to FDA regulations for Hill's to claim on its labels or in its labeling or other manufacturer communications that its food treats or prevents disease when the FDA has not approved it for that purpose. It is misbranded, adulterated, and unsafe. But the FDA retains the discretion to take enforcement action against Hill's even if it does require a prescription from a veterinarian—because it is still

13

misbranded, adulterated, and unsafe under the agency's definitions. The prescription requirement does not make a product safe that is otherwise unsafe, it simply mitigates the harm that the food may cause due to the failure to gain FDA approval.

In support of its reliance on the CPG as a complete defense to any claims of deception, Hill's cites *Bomhoff v. Nelnet Loan Services, Inc.*, 279 Kan. 415, 424, 109 P.3d 1241 (2005), where the Kansas Supreme Court held a lender did not violate the KCPA because it followed federally mandated practices; therefore, the lender's actions were not deceptive. That said, Hill's acknowledges the CPG mandates nothing; it at most encourages. So *Bomhoff* is inapplicable to this set of facts.

But there is another reason *Bomhoff* has limited application here. It was a case decided on summary judgment, not a motion to dismiss on the pleadings. Motions to dismiss for failure to state a claim are limited to a review of the pleadings while motions for summary judgment consider all the facts disclosed during discovery. *John Doe v. M.J.*, 59 Kan. App. 2d 273, 282-83, 482 P.3d 596 (2021). Litigants are therefore cautioned against conflating cases challenging the grant or denial of summary judgment with the standard of review required for pleadings under our liberal notice pleading scheme. There has been no discovery here regarding whether Hill's followed all of the FDA guidelines and which, if any, are mandatory. So we view any discussion of Hill's specific practices related to FDA guidelines as premature.

Moreover, Hill's seems to ignore that much of Kucharski-Berger's pleadings focus on the fact that Hill's labels and markets its products as requiring a prescription. It is that prescription labeling, and the inferences that a reasonable consumer would make, that Kucharski-Berger challenges. Kucharski-Berger does not, at least entirely, oppose veterinarian involvement. Instead, she is alleging that by mandating a prescription, Hill's is violating the KCPA. "[A]n advertising practice can be deceptive without directly

14

violating FDA regulations." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020).

At least one other court has found that the labeling of pet food as requiring a prescription could be considered deceptive and misleading.

"Common sense dictates that a product that requires a prescription may be considered a medicine that involves a drug or controlled substance. See, *e.g.*, Prescription, Merriam-Webster, https://www.merriam-webster.com/dictionary/prescription (last accessed August 2, 2019) (defining 'prescription' as, among other things, 'a prescribed medicine'). This conforms to general understandings of prescription drugs for humans and pets. Moreover, the brand name of 'prescription pet food' itself could be misleading. A reasonable consumer being told about 'prescription pet food' may be surprised to learn that there are no drugs or controlled ingredient[s] in the pet food by nature of brand names like 'Prescription Diet' or an 'Rx' symbol on the food packaging. See [*Williams* v. *Gerber Products. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)] ('The product is called "fruit juice snacks" and the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product.')." 966 F.3d at 1018.

Ultimately, "[w]hether a deceptive act or practice has occurred under the [KCPA] is not a question of law for the court, but rather a question of fact for the jury to decide." *Manley v. Wichita Business College*, 237 Kan. 427, Syl. ¶ 2, 701 P.2d 893 (1985). And as we have stated, our role here is only to determine whether Kucharski-Berger's petition sufficiently apprises Hill's of the facts upon which she claims to be entitled to relief, not whether she can prove them or whether they have merit. Hill's defenses to the claims are not our concern at this stage unless they require dismissal as a matter of law. And they do not.

*D. Kucharski-Berger succeeded in pleading fraud with sufficient particularity as related to her KCPA claim*

Hill's contends that Kucharski-Berger has not sufficiently pled her fraud claim under the KCPA. It argues that this failure merits dismissal. We disagree.

Under K.S.A. 2020 Supp. 60-209(b), a party alleging "fraud . . . must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Still, while claims brought under K.S.A. 2020 Supp. 50-626 "'sound largely in fraud . . . a critical element of a common-law fraud action, the intent to defraud, need not be proven.'" *Wagher v. Guy's Foods, Inc.*, 256 Kan. 300, 303-04, 885 P.2d 1197 (1994) (quoting *Haag v. Dry Basement, Inc.*, 11 Kan. App. 2d 649, 650, 732 P.2d 392 [1987]).

Likewise, to bring a successful action under the KCPA, a consumer is not required to prove all the elements of common-law fraud. *Ray v. Ponca/Universal Holdings, Inc.*, 22 Kan. App. 2d 47, Syl. ¶ 2, 49-50, 913 P.2d 209 (1995) (holding KCPA claims may be established by a preponderance of the evidence rather than by clear and convincing evidence). Part of that holding is tied to the idea that the Legislature wants the KCPA to be liberally construed to protect consumers. See K.S.A. 50-623; *Ray*, 22 Kan. App. 2d at 49.

In this case, Kucharski-Berger alleged that Hill's violated the KCPA by

"misrepresenting and marketing and selling Prescription Pet Food through a knowingly deceptive, misleading, and self-imposed prescription requirement . . . . In so doing, Hill's has represented that Prescription Pet Food has sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that it does not have [K.S.A. 2020 Supp. 50-626(b)(1)(A)]; represented that Prescription Pet Food is of particular standard, quality, grade, style or model, when Prescription Pet Food is of another that differs

16

materially from Hill's representation [K.S.A. 2020 Supp. 50-626(b)(1)(D)]; and engaged in the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact regarding Prescription Pet Food [K.S.A. 2020 Supp. 50-626(b)(3)]."

Two of Kucharski-Berger's claims do not involve an intent requirement, while the last one does. See *Crandall v. Grbic*, 36 Kan. App. 2d 179, 196, 138 P.3d 365 (2006); *Cornelison v. Denison State Bank*, No. 108,427, 2014 WL 37682, at *11 (Kan. App. 2014) (unpublished opinion).

Hill's points to *Ayalla v. Southridge Presbyterian Church*, 37 Kan. App. 2d 312, 319-20, 152 P.3d 670 (2007), where this court held that the plaintiff failed to properly plead fraud in an action brought under the KCPA. Hill's reliance on this case is misplaced for three reasons.

First, *Ayalla* was a summary judgment case, not a motion to dismiss on the pleadings. Summary judgment hinges on a review of all the evidence following discovery to determine whether there are any genuine issues of fact. As we have already stated, the standard under which to review pleadings is less onerous. We concede that the district court found that Ayalla was alleging a fraud claim but never added a fraud claim to her petition—so the analysis would be similar to our motion to dismiss standard of review. But the court also noted that she could not factually establish fraud even if she had pled it properly, a decision that goes beyond the pleadings, which limits its application here.

Second, Ayalla sued for breach of contract after Southridge Presbyterian accepted a competing offer for a home. Ayalla argued that Southridge Presbyterian violated the KCPA based on its fraudulent misrepresentation of her offer to the competing buyer as a competing bid rather than an accepted offer. This court affirmed the dismissal of the claim, finding: (1) Ayalla failed to assert fraud as a separate theory of recovery in her

17

petition and (2) even if she had pled fraud properly, she failed to show that she relied on a misrepresentation. 37 Kan. App. 2d at 319-20. There was no discussion in the case about the distinction between a traditional fraud claim and a claim of fraudulent conduct under the KCPA. The cases that we have cited that discuss this distinction are not mentioned at all in *Ayalla*. So to assume from the case that a party must always specifically plead fraud in a KCPA claim is an overreach.

Finally, in analyzing Ayalla's claim as a traditional fraud claim, the panel noted that to prove fraud requires a plaintiff to show these elements: "'an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or with reckless disregard for the truth, upon which another party justifiably relies and acts to his or her detriment.'" 37 Kan. App. 2d at 319 (quoting *Crandall*, 36 Kan. App. 2d 179, Syl. ¶ 3). And that is correct as to a separate fraud claim. But at the very least, Kucharski-Berger's two claims under K.S.A. 2020 Supp. 50-626(b)(1) do not require the pleading requirements for actions brought in fraud because, while similar to fraud claims, they are not themselves allegations of fraud and contain no element of intent. See *Wagher*, 256 Kan. at 303-04.

Even if we were to find that the remaining claim under K.S.A. 2020 Supp. 50-626(b)(3) (willful concealment, suppression, or omission of a material fact)—or the others—required Kucharski-Berger to plead with particularity, she has done so in this case. Kucharski-Berger alleged that Hill's made an untrue statement of fact, namely that Hill's marketed its prescription pet food as prescription only when, in fact, the FDA merely encouraged prescription pet food be sold only to consumers through a veterinarian intermediary, and that she relied on the use of the term prescription to her detriment. Moreover, Kucharski-Berger alleged that Hill's knew that its prescription pet food had no medicine or drug and was not approved by the FDA and that it used its prescription labeling and marketing to inflate the price of the prescription pet food.

18

Kucharski-Berger has done enough at this stage of the lawsuit to put Hill's on notice of what her allegations are under the KCPA.

E. *Kucharski-Berger properly pled causation and resultant harm.*

Hill's asserts that Kucharski-Berger has failed to allege a causal connection between the prescription practice and her alleged injury, both of which it argues are required to establish that she was aggrieved. It claims that this failure requires dismissal. It relies on *Finstad v. Washburn University*, 252 Kan. 465, 845 P.2d 685 (1993). In *Finstad*, students in the court reporting program at Washburn University filed a claim under the KCPA based on the University's false representation in its catalog that the program was certified or soon to be certified when it was not. But *Finstad* does not provide the support Hill's seeks for two reasons.

First, *Finstad* involved a summary judgment motion, not a motion to dismiss on the pleadings. Summary judgment places a case in a different procedural posture than the current case. See *John Doe*, 59 Kan. App. 2d at 282-83 (noting that motions to dismiss are limited to a review of the pleadings while motions for summary judgment consider all the facts disclosed during discovery).

Second, when the students filed their petition, K.S.A. 50-626(b) did not include the current provision that a consumer need not be misled to pursue a claim for a deceptive act under the KCPA. The court interpreted the new provision, although not applicable to the case before it, as establishing per se violations of the KCPA for any of the listed deceptive acts. 252 Kan. at 470. But the consumer still needed to establish that they were aggrieved by the deception and that there was a causal connection between the deception and the injury to maintain a private action under the KCPA. The court defined an aggrieved party as one whose legal right is invaded by an act complained of or whose pecuniary interest is directly affected. 252 Kan. at 472. The court granted summary

19

judgment to the University because the students did not establish they were aggrieved by the deceptive act. There was no showing that any of the students relied on the deceptive catalog information or suffered any injury or loss because of the publication of the statement. 252 Kan. at 472. Such is not the case here.

Under the current version of the statute, Kucharski-Berger need not establish that she was misled by Hill's, so long as Hill's was engaged in a deceptive act or practice. See K.S.A. 2020 Supp. 50-626(b). Kucharski-Berger is not alleging that the prescription pet food that she is buying is ineffective or harmful to her pet. Given that she continues to buy it she must see some value in the pet food. Her assertion is that the price of the pet food is significantly higher than it should be because of Hill's allegedly deceptive marketing practices. So she properly alleges that she is aggrieved by being required to pay higher prices for dog food based solely on Hill's manufactured prescription requirement.

> "As a result of the false and fraudulent prescription requirement and the combination and conspiracy of Hill's and its co-conspirators, Plaintiff paid more for Prescription Pet Food than Plaintiff would have paid in the absence of the requirement, or would never have purchased Prescription Pet Food."

Hill's further argues that "'[w]hen causation is based on a chain of events, an intervening cause may absolve the defendant of liability.'" *State v. Wilson*, 308 Kan. 516, 522, 421 P.3d 742 (2018) (quoting *State v. Arnett*, 307 Kan. 648, 655, 413 P.3d 787 [2018]). Hill's claims that the fact that Kucharski-Berger based her purchase of Hill's Prescription Diet pet food on the advice given to her by her veterinarian, the veterinarian was the intervening event that breaks the chain of causation, requiring her claim to be dismissed. We find this argument unpersuasive.

20

Kucharski-Berger's claim is premised on Hill's self-imposed prescription requirement. It has some similarity to the claims made in *Golden v. Den-Mat Corporation*, 47 Kan. App. 2d 450, 276 P.3d 773 (2012). In *Golden,* this court held that a consumer who received a brochure from Den-Mat but later bought the advertised product—veneers—from a dentist, could maintain an action against Den-Mat because the brochure contained representations that "were made 'in connection with' the sale and, if deceptive, would taint the sale in violation of the KCPA." 47 Kan. App. 2d at 471.

While Kucharski-Berger does not allege that she personally saw any of Hill's advertisements or labels for its prescription pet food before purchasing it from her veterinarian, that does not preclude her from bringing this action. The recommendation from the veterinarian that Hill's prescription pet food could treat her dog's allergic skin reactions and that the food was "available only by prescription" is directly related to her allegations about Hill's alleged deceptive marketing. As alleged by Kucharski-Berger, her veterinarian telling her that the prescription pet food was only available by prescription stems from Hill's requirement that veterinarians do so.

On the whole, Kucharski-Berger's pleading was enough to give Hill's notice of her KCPA claims against the company. Moreover, if particularity was required for pleadings alleging fraud, her petition was sufficiently particular. She alleged damages, and her continued purchasing of the dog food does not prove that she was not damaged by the conduct she alleges Hill's engages in. And the presence of her veterinarian as an intermediary between Hill's prescription requirement and Kucharski-Berger's purchase of Hill's prescription pet food is not a barrier absolving Hill's of liability if it is engaging in deceptive practices and acts. The district court erred in dismissing Kucharski-Berger's claim under the KCPA.

IV.   THE DISTRICT COURT ERRED BY DISMISSING KUCHARSKI-BERGER'S CLAIM THAT HILL'S VIOLATED THE KRTA.

Kucharski-Berger's petition asserts two claims under the KRTA. They are both closely related and rely on the same factual support.

A. *Kucharski-Berger appropriately pleads claims under the KRTA.*

To support her first claim under the KRTA, as outlined in K.S.A. 2020 Supp. 50-101 and K.S.A. 2020 Supp. 50-112, Kucharski-Berger needed to allege that Hill's was involved in a trust, defined as a "combination of capital, skill, or acts by two or more persons" for any of several purposes. Those purposes include: (1) creating or carrying out restrictions in trade or commerce or carrying out restrictions in the full and free pursuit of an authorized business; (2) increasing or reducing the price of merchandise, produce, or commodities; (3) to prevent competition in the manufacture, making, transportation, sale, or purchase of merchandise; and (4) entering into an agreement which would establish or settle the price of an article or commodity to preclude free and unrestricted competition in the market. See K.S.A. 2020 Supp. 50-101.

Kucharski-Berger alleges that under K.S.A. 2020 Supp. 50-101 and K.S.A. 2020 Supp. 50-112, Hill's, Purina, Mars, PetSmart, and Banfield

> "entered into a trust and contract, combination, or conspiracy in restraint of trade or commerce in Kansas to fix, raise, stabilize, and peg prices for Prescription Pet Food by agreeing, combining, and conspiring to misrepresent and market and sell Prescription Pet Food through a knowingly deceptive, misleading, and self-imposed prescription requirement having no legal basis or mandate."

She also contends that these actions were per se unlawful under the KRTA, arguing their actions have restrained trade in the prescription pet food market. Finally,

22

Kucharski-Berger asserts that because of this conspiracy she and others have been required to pay more for dog food than they would have otherwise paid absent Hill's violation.

Her second claim under the KRTA is based on K.S.A. 50-132—it is unlawful for any "person, servant, agent or employee of any person doing business within the state of Kansas [to] conspire or combine with any other persons, within or without the state for the purpose of monopolizing any line of business."

Kucharski-Berger alleges that, under K.S.A. 50-132, Hill's and the named coconspirators entered a conspiracy to monopolize the market for prescription pet food in Kansas and committed covert acts in furtherance of their conspiracy. They did this by

> "agreeing, combining, and conspiring to misrepresent and market and sell Prescription Pet Food through a knowingly deceptive, misleading, and self-imposed prescription requirement having no legal basis or mandate, and by agreeing, combining, and conspiring to limit and preclude non-conspiring competing manufacturers of Prescription Pet Food from access to major channels of distribution, including their co-conspirator retailers and veterinary clinics."

Kucharski-Berger properly pleads both claims in the language of the statute. A legal theory of relief need not be detailed, so long as the petition apprises the defendant of the facts upon which the plaintiff claims to be entitled to relief. *Beck*, 241 Kan. at 25.

B. *Kucharski-Berger's factual support for her KRTA claims*

So we turn to whether Kucharski-Berger has put forward sufficient factual allegations in her petition to support her claim or whether they are simply conclusory.

In support of her claim, Kucharski-Berger alleges:

"In March of 2005, Hill's, Mars, PetSmart, and Banfield entered into a combination and conspiracy to sell Prescription Pet Food, pursuant to which they agreed:

"(a) to restrict the retail sale of their Prescription Pet Food to pet owners who had obtained and presented a prescription;

"(b) to require that retail sellers enforce their prescription and presentation requirement; and

"(c) to restrict retail sellers to those who agreed to enforce the prescription requirement, all with the purpose and effect of raising, fixing, stabilizing, and pegging prices of Prescription Pet Food."

Kucharski-Berger alleges that Hill's, Purina, and Mars control somewhere between 95 to nearly 100 percent of the prescription pet food market. So any agreement among them to continue what Kucharski-Berger describes as the deceptive practice of requiring a prescription in an effort to keep prices high, would indicate an attempt to monopolize the market in violation of the KRTA.

Kucharski-Berger later proffers in her petition that she has been "informed and believe[s] that agreements between and among Mars, Purina, Hill's, PetSmart, and Banfield prohibit and restrict PetSmart and Banfield from stocking and selling Prescription Pet Food made by . . . other competitors." In furtherance of this conspiracy, "Hill's entered into a 'merchandising agreement' with PetSmart and Banfield, which Mars and PetSmart owned, to sell Hill's Prescription Pet Food in all PetSmart stores with an on-site Banfield pet hospital." She alleges that although Mars had the power to exclude Hill's from PetSmart and Banfield, it entered into the merchandising agreement against its economic interests, but as part of the previously noted agreement to control the market. Purina later joined the conspiracy. She alleges that Hill's and its coconspirators have intentionally blocked smaller prescription pet food manufacturers from selling in PetSmart and Banfield stores.

Kucharski-Berger claims in her petition that all of this points to an effort by Hill's and its coconspirators to monopolize the prescription pet food market and force out the few competitors that remain. This has led to "unjustifiably increased prices for Prescription Pet Food." She also alleges facts to support her claim that prescription dog food is priced unjustifiably high based solely on the prescription requirement that she claims is at the heart of the KRTA claims.

"For example, Hill's produces a Prescription Pet Food product called 'Prescription Diet Urinary Care c/d Multicare' cat food that sells for $5.62 per pound, and another substantially similar non-prescription product called 'Adult Urinary Hairball Control' cat food that sells for $3.51 per pound. The two products make essentially the same health claims and have a 75 percent overlap in ingredients. The non-overlapping ingredients are not drugs and are not sufficient to justify one product being sold by prescription for a significantly higher price. Given the overlap in ingredients, and the absence of any drug or other ingredient required to be sold by prescription in the Prescription Pet Food product, the only meaningful distinction between the two products that is apparent to Plaintiffs and those similarly situated is the prescription requirement. The price differential is therefore based largely, if not entirely, on the prescription requirement imposed by Hill's and the other manufacturing conspirators in the combination.

"Prescription Pet Food contains no drug or other ingredient not also common in non-prescription pet food. Hill's and its co-conspirators impose and enforce the prescription requirement to prey on the known propensities of consumers to love their pets and trust their vets."

She then alleges that when the FDA was considering a draft CPG that would require enforcement actions against dog food manufacturers that made claims about the therapeutic benefits of their food, many in the industry agreed that such claims were misleading.

"At the time of the Draft CPG, both the pet food industry and the veterinary profession widely held the view that use of a prescription requirement was improper and

25

misleading for products not subjected to FDA review and approval. In a filed comment on the Draft CPG, the American Feed Industry Association, representing 'more than 550 domestic and international companies and state, regional and national associations,' recommended 'that pet food products subject to this CPG should be regulated in a manner similar to human medical foods, as veterinary medical foods.' According to the FDA, 'The labeling of medical foods may not bear the symbol "Rx only",' because 'medical foods are not required by federal law to be dispensed by prescription,' and '[t]herefore, the use of the symbol "Rx only" in the labeling of a medical food would misbrand a medical food under section 403(a)(l) of the FD&C Act because it would be a false and misleading statement about that product.' Another filed comment from the American Veterinary Medical Association ('AVMA'), known as 'the recognized national voice for the veterinary profession,' representing 83 percent of all U.S. veterinarians, recommended that because Prescription Pet Food had "not been evaluated by FDA for safety, efficacy, or nutritional adequacy . . . all pet food products with implied or explicit health or drug claims [should] include a prominent statement on the label that these claims have not been evaluated by the FDA."

But from September to early November 2012, Hill's and its coconspirators, when faced with a draft CPG from the FDA that would have made the sale of their dog food illegal unless approved by the FDA, used their positions of power within the Pet Food Institute (PFI) to request that the FDA insert a requirement that the food be available only through a veterinarian. Thereafter,

"[t]hey further agreed that they all would construe the Draft CPG to require them to use a prescription requirement, and to contend that their use of the prescription requirement was a good faith effort to comply with the Draft CPG, notwithstanding their clear violations of its conditions."

If these claims are true, Kucharski-Berger has pled sufficient evidence to go beyond mere conclusory allegations. She has supported her pleading with facts revealing the who, what, when, and where of the alleged KRTA violations. At this stage of litigation Kucharski-Berger did not have to prove that the case was a winning case. She

26

was merely required to put Hill's on notice of what she was alleging. The court and parties can address the merits of the allegations at later stages of litigation.

## C. *Hill's argument that the facts alleged do not support any claim under the KRTA*

Hill's argues that Kucharski-Berger failed to allege direct evidence of a trust or conspiracy to fix prices. In support, Hill's cites *Smith v. Philip Morris Companies*, 50 Kan. App. 2d 535, 335 P.3d 644 (2014). Because it is at the heart of Hill's motion to dismiss this claim, we will examine it in more detail.

In *Smith*, the court discussed the need for either direct or circumstantial evidence of a conspiracy to fix prices or monopolize to support a KRTA claim and avoid summary judgment. Based on *Smith*, Hill's surmises that Kucharski-Berger needed to show in her pleadings that Hill's and other manufacturers entered into an express agreement or "'conscious commitment to a common scheme designed to achieve an unlawful objective.'" 50 Kan. App. 2d at 565-66. It alleges that she has failed to do so.

But Kucharski-Berger did allege a specific meeting in March 2005 where the issue of the prescription requirement was discussed and agreements were made—the purpose and effect of which was "raising, fixing, stabilizing and pegging prices of Prescription Pet Food." The central theme was to agree that they would support the prescription requirement to keep prices inflated. This alone provided enough detail to put Hill's on notice of what conduct it was alleged to have participated in. And if true, it is certainly the "smoking gun" that Hill's argues is necessary to support a conspiracy claim.

Also citing *Smith*, Hill's asserts that Kucharski-Berger is in essence alleging conscious parallelism on the part of Hill's and its coconspirators (the process "by which firms in a concentrated market might in effect share monopoly power, setting their prices at a prefixed maximizing, supracompetitive level by recognizing their shared economic

27

interests and their interdependence with respect to price and output decisions." *Brooke Group v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227, 113 S. Ct. 2578, 125 L. Ed. 2d 168 [1993]). The theory is that the uniform conduct of pricing by competitors permits a court to *infer* the existence of a conspiracy between those competitors.

Because the evidence of conscious parallelism is circumstantial, courts are concerned that they do not punish unilateral, independent conduct of competitors. See *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). They therefore require that evidence of a defendant's parallel pricing be supplemented with "'plus factors.'" *Smith,* 50 Kan. App. 2d at 563. Our court described "plus factors" as simply "*an articulation* of the requirement that an inference drawn from the plaintiff's circumstantial evidence offered to establish collusive pricing must be reasonable." *Smith*, 50 Kan. App. 2d at 568. In other words, evidence from which a court could reasonably infer that they were acting by agreement and not simply their own self-interest.

> "Any showing by a plaintiff that tends to exclude the possibility of independent action can qualify as a plus factor. If a benign explanation of a defendant's action is equally plausible or more plausible than a collusive explanation, the action cannot constitute a plus factor. On the other hand, evidence that a defendant's behavior would not be reasonable or explicable (*i.e.,* not in its legitimate economic self-interest) if it were not conspiring to fix prices can constitute a plus factor." *Smith*, 50 Kan. App. 2d 535, Syl. ¶ 8.

So Hill's asserts that Kucharski-Berger had to plead plus factors to support the conspiracy and her failure to do so dooms her KRTA claim.

But Hill's misapplies *Smith* to the facts here.

28

First, Hill's has again cited a case that involved the criteria for summary judgment on a KRTA claim, not a motion to dismiss. Summary judgment places a case in a different procedural posture than the current case. See *John Doe*, 59 Kan. App. 2d at 282-83. The *Smith* court found that "to establish a material question of fact and thereby survive *summary judgment*, Plaintiffs must come forward with evidence that Defendants' wholesale pricing practices resulted from something more than legal conscious parallelism." (Emphasis added.) *Smith*, 50 Kan. App. 2d at 568. Hill's cites no caselaw to support its claim that such "plus factors" are required at the pleading stage. We can find none in Kansas. But see *Twombly*, 550 U.S. at 557 ("[W]hen allegations of parallel conduct are set out [in the pleadings] in order to make a § 1 claim [under the Sherman Act], they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.").

Moreover, even if plus factors were required at the pleading stage, Kucharski-Berger sufficiently alleges plus factors and evidence of the implausibility of independent action to withstand a motion to dismiss. *Smith* recognized that "[e]vidence of actions contrary to a defendant's economic self-interest can serve as a plus factor." 50 Kan. App. 2d 535, Syl. ¶ 14. Kucharski-Berger alleged several facts in her petition that pointed to collective action, not independent action, including actions against self-interest.

She alleged that coconspirator Mars was acting against its self-interest when it allowed Hill's to sell its prescription dog food in its PetSmart stores with an on-site Banfield pet hospital. This, she claims, is evidence that the major players in the pet food industry had reached an agreement to act in concert, not independently.

She alleged:

"The decision to continue their Prescription Pet Food combination and conspiracy, as they had been doing in violation of federal and state law, was a decision

29

made collectively by Hill's and its co-conspirators, in that such a decision was contrary to the independent economic self-interest of each of them without agreement with the others, but rational if made collectively to continue their successful combination. The conduct of Hill's and each other co-conspirator in violating the FD&C Act and various federal and state deceptive trade practice and consumer protection laws all by itself exposed it to multiple risks, including (1) potential solicitation of FDA enforcement action by a competitor or consumer; (2) suit by another conspirator for deceptive marketing practices in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) advertising to consumers exposing the sham selling of Prescription Pet Food and consequent loss of sales and consumer good will; and (4) suit by consumers on learning of the deception. Any of these risks could result in public exposure and the irrecoverable loss of consumer trust and goodwill, inasmuch as the deceptive use of the prescription requirement depended for its success on the unquestioning faith of vulnerable pet owners in the disinterested advice and recommendations of their veterinarians. If, however, all conspirators, as the dominant sellers of Prescription Pet Food, agreed jointly to continue selling Prescription Pet Food as they had been, these risks would be substantially mitigated because of their combined resources and collective market power."

She then alleges the implausibility of independent action.

"Once the Draft CPG was issued, it is further implausible that Hill's, Purina, and Mars would each have independently concluded that the Draft CPG suggested, recommended, or authorized the use of a prescription requirement in the marketing and sale of Prescription Pet Food, or that the Draft CPG suggested, recommended, or authorized their making disease claims on labeling or promotional materials provided to consumers, whether in print or on websites. It is further implausible that each would have independently decided to engage in a course of conduct in violation of the Draft CPG and the FD&C Act in exactly the same manner, as in fact occurred. That all three manufacturers decided to violate the Draft CPG and FD&C Act in the same way is explicable only as the result of a collective decision or agreement."

And we cannot lose sight of the fact that Kucharski-Berger claims that an actual agreement was reached at a meeting between the coconspirators in March 2005. She

30

makes no claim of conscious parallelism as it relates to that meeting. There are no inferences required, so no plus factors are required for that claim.

The petition provides appropriate notice of the claims Kucharski-Berger was bringing under the KRTA, and her alleged facts do not preclude her from obtaining relief. The district court erred in dismissing her KRTA claims.

V.    THE DISTRICT COURT ERRED IN DISMISSING KUCHARSKI-BERGER'S UNJUST ENRICHMENT CLAIM.

In her petition, Kucharski-Berger alleges that Hill's was unjustly enriched by its misrepresentations and deceptive marketing practices involving its prescription pet food. Unjust enrichment arises when (1) a benefit has been conferred upon the defendant, (2) the defendant retains the benefit, and (3) under the circumstances, the defendant's retention of the benefit is unjust. See *In re Estate of Sauder*, 283 Kan. 694, 719, 156 P.3d 1204 (2007). She alleges that she was required to pay an unjustifiably high price for her pet food because of Hill's false and deceptive prescription requirement. This is the same conduct that she alleges violated the KCPA.

Unlike its other allegations that Kucharski-Berger presented insufficient evidence to support her claim, here Hill's argues that Kucharski-Berger's unjust enrichment claim must be dismissed because it was seeking a remedy for the same conduct covered by the KCPA. It cites *Deeds v. Waddell & Reed Invst. Mgmt. Co.*, 47 Kan. App. 2d 499, 511, 280 P.3d 786 (2012), for the proposition that "a claim for unjust enrichment is an equitable claim, and generally an equitable remedy is not available when an adequate remedy exists under another legal claim." In *Deeds*, the plaintiff brought a claim under the Kansas Wage Payment Act and an unjust enrichment theory. Because Deeds had a statutory remedy through the Kansas Wage Payment Act, this court found that his unjust enrichment claim was preempted. 47 Kan. App. 2d at 511.

31

Yet again, Hill's seems to ignore the fact that this case is before us on a motion to dismiss on the pleadings, not on a summary judgment motion. *Deeds* involved a ruling on summary judgment. The court found that Deeds had a pending claim under the Kansas Wage Payment Act with the Secretary of Labor, so his unjust enrichment claim was preempted by that claim at the summary judgment stage. Hill's cites no Kansas case that discusses the *Deeds* holding as it relates to a motion to dismiss based on the pleadings. And there is a good reason for that.

To apply this rule to a motion to dismiss on the pleadings would ignore Kansas pleading rules. "A party may set out two or more statements of a claim or defense alternately or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." K.S.A. 2020 Supp. 60-208(d)(2); *Beams v. Werth*, 200 Kan. 532, 549, 438 P.2d 957 (1968) (finding a party will not be required to elect at the pleading stage of the case which legal theory relied on; this would defeat the purpose of allowing inconsistent pleading). Clearly, Kucharski-Berger cannot recover under both theories, but she can plead both at this early stage. See *Nieberding v. Barrette Outdoor Living, Inc.*, No. 12-2353-KHV, 2012 WL 6024972, at *4 (D. Kan. 2012) (unpublished opinion).

For these reasons, the district court erred in dismissing Kucharski-Berger's unjust enrichment claim.

Reversed and remanded for further proceedings.