NOT DESIGNATED FOR PUBLICATION

No. 124,662

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KURT GARRISON,
*Appellant*,

v.

LEVY WARD AND JEAN WARD,
*Appellees*.

MEMORANDUM OPINION

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed July 29, 2022. Affirmed.

*Kurt Garrison*, appellant pro se.

*Keith A. Brock*, of Anderson & Byrd, LLP, of Ottawa, for appellees.

Before HURST, P.J., BRUNS and GARDNER, JJ.

PER CURIAM: This appeal arises from several orders issued by the district court in a civil action filed by Kurt Garrison against Levy and Jean Ward. First, Garrison contends that the district court erred by granting summary judgment in favor of the Wards. Second, Garrison contends that the district court erred by not allowing him to amend his petition to add the Ward's real estate agent as a defendant. Third, Garrison contends that the district court abused its discretion by imposing sanctions against him under K.S.A. 2020 Supp. 60-211. Fourth, Garrison contends that the district court erred by not removing the district court assigned to the case.

1

Based on our review of the record on appeal, we do not find that the district court erred. Moreover, we grant the motion for appellate attorney fees—which the Wards filed pursuant to Kansas Supreme Court Rule 7.07 (2022 Kan. S. Ct. R. at 51). Thus, we affirm the district court and order that Garrison additionally reimburse the Wards for reasonable appellate attorney fees in the amount of $4,191.30.

FACTS

Levy and Jean Ward—who are husband and wife—were the owners of real estate located on Idaho Road in Williamsburg, Kansas. The record reflects that the Wards—who are in their 90s and in failing health—owned the real property as joint tenants with right of survivorship. For several years, Kurt Garrison has desired to purchase the real property from the Wards. Garrison holds a bachelor's degree in mechanical engineering as well as a law degree. However, he is not licensed to practice in the state of Kansas and is appearing pro se in this case.

On November 2, 2020, Garrison called Jean—although he had previously been requested by the Wards' daughter not to contact her parents directly—and evidently offered to purchase the real estate. According to Garrison, Jean orally agreed to sell him the real property for $39,000 to be paid on a future date. However, according to Jean, she never orally agreed to sell the real property to Garrison during the telephone call.

It is undisputed that Garrison did not speak with Levy during the telephone call. Likewise, there is no allegation that Levy ever agreed—either orally or in writing—to sell the real property to him. It is also undisputed that the parties never entered into a written agreement regarding the sale of the real estate. Although Garrison subsequently sent the Wards a real estate contract and a $500 check to serve as an earnest money deposit to the Wards, the contract was returned unsigned and the check was returned uncashed.

2

Although the timing of the events is not clear from the record, Garrison claims that his wife—who is not a party to this action—cashed in a life insurance policy with a face value of $100,000 for $24,958. According to Garrison, this money was to be used to complete the purchase of the real property from the Wards. There is no allegation that this money was ever paid to the Wards.

On November 5, 2020, Todd Burroughs—a real estate agent retained by the Wards—informed Garrison that the Wards had accepted an offer from another buyer who is not a party to this case.

On November 18, 2020, Garrison filed a petition against the Wards for breach of contract. Additionally, Garrison also asserted a cause of action for tortious interference with contract against what he referred to as an "Unnamed Doe Defendant." On the same day that he filed this action, Garrison emailed the title company to notify it of the filing of his lawsuit.

In his email, Garrison stated:

"Please inform any potential purchaser that:

"1. They will be named as co-defendant(s) to this lawsuit[,] 2. This will likely go on for years[,] 3. Lawyer fees to defend against this lawsuit could easily exceed the sale price of the real property[,] 4. If someone purchases this real estate they may be required by court order to sell to me at the price that I contracted to purchase this property[,] 5. Lawyer fees and any money a purchaser invests in the property will not likely be added to the sale price.

"If someone chooses to purchase this property, they should know what they are getting into. Thank you for your help."

3

A few days later, on November 25, 2020, Garrison sent a letter to the Wards indicating that he would dismiss his lawsuit on the condition that they sell the real property to him. In addition, Garrison warned the Wards "that district court civil cases usually take year(s) for resolution. However, this civil cause may be withdrawn by weeks end if the real property . . . is sold and recorded in my name this week."

On January 5, 2021, the Wards' attorney moved to dismiss this action pursuant to K.S.A. 2020 Supp. 60-212(b)(6) and requested that the district court impose sanctions against Garrison under K.S.A. 2020 Supp. 60-211. The district court held an initial hearing on February 9, 2021. At the initial hearing, the district court advised the parties that it would be treating the motion to dismiss as a motion for summary judgment under K.S.A. 2020 Supp. 60-212(d) because the parties were relying on matters outside the pleadings. The district court ordered that discovery should be completed by February 19, 2021, and set various other deadlines.

The district court held a final hearing on the pending motions filed by the parties on April 13, 2021. Prior to the hearing, Garrison attempted to file an amended petition adding Burroughs as a defendant. After hearing argument, the district court found that the Wards should be granted judgment as a matter of law. In addition, the district court denied Garrison's motion to file an amended petition to add Burroughs as a defendant. The district court also found that the motion for sanctions filed by the Wards should be granted.

On May 6, 2021, before the district court had issued its journal entry, Garrison filed a motion to disqualify Judge Eric W. Godderz who was presiding over this case. In an affidavit filed pursuant to K.S.A. 20-311d, Garrison alleged that Judge Godderz was biased against him. After Judge Godderz informally denied the motion, the matter was assigned to Judge Douglas P. Witteman. On June 24, 2021, Judge Witteman found that

4

Garrison's affidavit was "legally insufficient to disqualify District Judge Eric W. Godderz" and denied the request for a change of judge.

In so reaching this determination, Judge Witteman found, in part, as follows:

"In his affidavit Plaintiff lists five (5) cases (including the instant case) in which [he] was a party and Judge Godderz was the presiding judge. Plaintiff goes into great detail to allege facts that he believes relevant and that he believes are supportive of his position in said cases. Likewise, Plaintiff goes into great detail alleging specific decisions and findings made by Judge Godderz in each case that he believes are erroneous.

. . . .

" . . . Simply stated, Petitioner believes that adverse rulings by Judge Godderz in the aforementioned five (5) cases is sufficient evidence of bias and/or prejudice to disqualify Judge Godderz.

"As stated in K.S.A. 20-311d(d):

> "**In any affidavit filed pursuant to this section, the recital of previous rulings or decisions by the judge on legal issues** or concerning the legal sufficiency of any prior affidavits filed by counsel for a party in any judicial proceeding, or filed by such counsel's law firm, pursuant to this section, **shall not be deemed legally sufficient for any belief that bias or prejudice exists.** (emphasis added)

"Plaintiff is clearly complaining about past rulings made by Judge Godderz as the basis for his request for disqualification. The law is clear that 'previous rulings of a trial judge, although numerous and erroneous, are not alone sufficient to show bias or prejudice to disqualify a judge under K.S.A. 20-311d. Such rulings are subject to review and correction on appeal and will not justify disqualification.' State, ex rel. *Miller v. Richardson*, 229 Kan. 234, 238, Syl 2 (1981), *Hulme v. Woleslagal*, 208 Kan. 385, 397,

5

Syl. 10 (1972) K.S.A. 20-311d(d). A trial judge's allegedly incorrect rulings could not form the basis for recusal. See *State v. Dunn*, 243 Kan. 414, 758 P. 2d 718 (1988).

"Based on the allegations and information contained in Plaintiff's Affidavit in Suport of Plaintiff's Motion to Change Judge, the Court FINDS that pursuant to the provisions of K.S.A. 20-311d, the Affidavit is legally insufficient to disqualify District Judge Eric W. Godderz from further presiding over the instant case. Petitioner's request to change judge is denied. The case shall be returned to Judge Godderz's docket for further proceedings."

After the case was returned to Judge Godderz, he issued a journal entry granting judgment in favor of the Wards, denying Garrison's claims, striking the First Amended Petition attempting to join Burroughs as a defendant, and ordering Garrison to pay the Wards' attorney fees in the amount of $6,222.46.

In the journal entry filed on October 28, 2021, the district court explained:

"18. Even if it is assumed for purposes of Defendants' Motion to Dismiss that an oral agreement was entered into between Plaintiff and Jean Ward during their telephone call on November 2, 2020, such oral agreement is unenforceable as a matter of law pursuant to K.S.A. 33-106.

"19. Plaintiff contends that the doctrine of promissory estoppel acts as a defense to the statute of frauds in this case. However, the only two acts of reliance Plaintiff claims to have taken in reliance upon the alleged oral agreement are insufficient as a matter of law to invoke the doctrine of promissory estoppel. The actions which Plaintiff contends give rise to the doctrine of promissory estoppel are, (i) Plaintiff spent his own time drafting a real estate contract and mailed it together with a check in the amount of $500 to Defendants; and (ii) Plaintiff's wife, Debra Donoghue surrendered a life insurance policy to pay for a portion of the purchase price for the Real Estate. It is undisputed that Plaintiff's contract and check in the amount of $500 was returned to Plaintiff, unsigned and un-negotiated. Such actions are insufficient as a matter of law to support Plaintiff's reliance upon the doctrine of promissory estoppel.

"20. Plaintiff's reliance upon Debra Donoghue's surrender of the above referenced life insurance policy is insufficient to support Plaintiff's reliance upon the doctrine of promissory estoppel for the following reasons:

"i. The life insurance policy did not belong to the Plaintiff and Debra Donoghue is not a party to this litigation;

"ii. Plaintiff has not presented any evidence that Plaintiff suffered any injury as a result of Debra Donoghue's surrender of her life insurance policy;

"iii. The documentary evidence clearly shows that the surrender of the subject life insurance policy was not finalized until after Plaintiff had been notified that Defendants did not intend to sell the Real Estate to Plaintiff; and

"iv. Even if Plaintiff had suffered some injury as a result of the surrender of the subject life insurance, the surrender of said life insurance policy was not reasonable under the circumstances. Plaintiff knew or should have known that a written agreement was required for the sale of real estate and therefore should have waited until after a written contract had been signed by Defendants agreeing to sell the Real Estate to Plaintiff before surrendering the subject life insurance policy.

"21. Even when construing all disputed facts and inferences against the Defendants for the purposes of their Motion to Dismiss and in favor of Plaintiff, Defendants' Motion to Dismiss should be and is hereby granted. Plaintiff's claims are insufficient as a matter of law and are hereby dismissed in their entirety.

"22. Further, the Court finds that this action was filed for an improper purpose such as to cause unnecessary delay and attempt to force Defendants to sell the Real Estate to Plaintiff even though they were not legally obligated to do so. Plaintiff's claims are clearly precluded by K.S.A. 33-106 and applicable case law. However, Plaintiff nevertheless sent lis pendens notices to the title company and filed this action in order to purposefully stop the sale of the Real Estate to another buyer.

"23. Plaintiff's actions in circumventing Defendants' attorney in fact and also their real estate agent in order to attempt to persuade Jean Ward (who is 90 years old) by telephone to sell the Real Estate to Plaintiff, and also Plaintiff's conduct in sending letters to

7

Defendants and to the title company threatening this litigation would take years to resolve and would cost more to resolve than the value of the Real Estate unless the Real Estate was sold to Plaintiff, rise to the level of imposing sanctions against Plaintiff. Therefore, sanctions against Plaintiff are justified.

"24. Sanctions are hereby imposed against Plaintiff as a result of his breach of K.S.A. 60-211(b)(2) & (3). An appropriate sanction in this case against Plaintiff is to require him to reimburse Defendants for their costs, expenses and attorney fees incurred in defending against the frivolous claims made by Plaintiff. Therefore, Plaintiff is hereby ordered to pay Defendants $6,222.46 as sanctions for violating K.S.A. 60-211(b)(2) & (3). The hourly rate charged by Defendants' attorney is $215 per hour, and in light of the pleadings, hearings and written discovery conducted herein, 30 hours is a reasonable amount of time for Defendant's [sic] attorney to have spent defending this case and $215 per hour is a reasonable hourly rate."

Thereafter, Garrison filed a timely notice of appeal.

ANALYSIS

On appeal, Garrison presents four issues. First, whether the district court erred in granting summary judgment to the Wards. Second, whether the district court erred by not granting Garrison leave to file an amended petition to add Burroughs as a defendant. Third, whether the district court abused its discretion by imposing sanctions against Garrison pursuant to K.S.A. 2020 Supp. 60-211. Fourth, whether the district court erred by denying Garrison's motion to disqualify Judge Eric E. Godderz. In addition to these issues, we will also consider the motion for appellate attorney fees filed by the Wards pursuant to Kansas Supreme Court Rule 7.07.

*Granting of Summary Judgment to the Wards*

Garrison contends that the district court erred by granting the Wards summary judgment as a matter of law. He argues that he entered into an oral contract with Jean

Ward for the sale of real property owned by her and her husband. Although Garrison admits that there is no written agreement between the parties, he argues that promissory estoppel should have prevented the entry of summary judgment in favor of the Wards.

As discussed above, the district court treated the Wards' motion to dismiss as a motion for summary judgment under K.S.A. 2020 Supp. 60-212(d) because the parties relied upon evidence outside of the pleadings. Prior to ruling on the motion, the district court granted the parties a brief period to complete discovery and to present all materials' they believed were pertinent to the resolution of the motion. See *Sperry v. McKune*, 305 Kan. 469, 481, 384 P.3d 1003 (2016). We note that the parties do not complain about the procedure used by the district court. Thus, we will also treat the Wards' motion to dismiss as a motion for summary judgment for the purposes of this appeal.

As the Kansas Supreme Court has held:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo." *GFT Lenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

In Kansas, "[n]o action shall be brought . . . upon any contract for the sale of lands . . . or any interest in or concerning them . . . unless the agreement . . . be in writing and signed by the party to be charged . . . " K.S.A. 33-106. "Enacted to prevent fraud and

9

injustice, the statute of frauds requires that an enforceable contract for the sale of real estate be in writing and signed by the party against whom enforcement is sought." *Ayalla v. Southridge Presbyterian Church*, 37 Kan. App. 2d 312, 316, 152 P.3d 670 (2007). Here, it is undisputed that there is no written agreement for the sale of the Wards' real property to Garrison.

Like the district court, we find that there is no genuine issue of material fact in dispute. Even though it is disputed whether Jean Ward orally agreed to sell the real estate to Garrison during the telephone call on November 2, 2020, any such agreement would be unenforceable as a matter of law because it is uncontroverted there is no written agreement signed by the parties against whom enforcement is sought. In fact, there is not even an allegation that Levy Ward agreed—either orally or in writing—to sell the jointly owned real property. Thus, the Wards are entitled to summary judgment as a matter of law on Garrison's breach of contract claim.

Although his argument is difficult to follow, Garrison attempts to avoid the ramifications of the statute of frauds by arguing the equitable remedy of promissory estoppel. Promissory estoppel requires both misrepresentation by the seller and detrimental reliance by the buyer. See *Bittel v. Farm Credit Svcs. of Central Kansas, P.C.A.*, 265 Kan. 651, 662, 962 P.2d 491 (1998). A party asserting promissory estoppel must come forward with facts sufficient to establish this theory when opposing a motion for summary judgment. *10th Street Medical v. State*, 42 Kan. App. 2d 249, 256-57, 210 P.3d 670 (2009).

In other words, to survive summary judgment, the party asserting promissory estoppel must establish:  (1) the seller reasonably intended or expected the buyer to act in reliance on the promise; (2) the buyer acted reasonably in reliance on that promise; and (3) a refusal to enforce the promise would sanction the perpetration of fraud or result in gross injustice. *10th Street Medical*, 42 Kan. App. 2d at 256. Furthermore, in the absence

10

of compelling equitable considerations, an oral agreement for the sale of real estate is unenforceable under the statute of frauds. *Bank of Alton v. Tanaka*, 247 Kan. 443, 453, 799 P.2d 1029 (1990); see *Ayalla*, 37 Kan. App. 2d at 320-21.

Based on our review of the record, we find that Garrison has not come forward with sufficient facts to establish the elements of promissory estoppel. In particular, Garrison has not shown that he reasonably relied on the oral promise allegedly made to him by Jean Ward. As a law school graduate—who graduated "with honors" and signs the legal documents filed in this case with the initials "J.D." after his name—Garrison either knew or should have known that the statute of frauds requires that agreements for the sale of real property be in writing.

Likewise, Garrison either knew or should have known that the signatures of both joint owners of the real property would be required on the written agreement to be enforceable. See K.S.A. 33-106; *Ayalla*, 37 Kan. App. 2d at 316 ("the statute of frauds requires that an enforcement contract for the sale of real estate be . . . *signed by the party against whom enforcement is sought*" [emphasis added]). Even when we view the alleged facts in the light most favorable to Garrison, he has—at most—come forward with evidence that one of the two joint owners orally promised to sell the real property. Moreover, this allegation is based on his own self-serving testimony and is denied by Jean Ward. Nevertheless, Garrison makes no allegation—and has come forward with no evidence—that Levy Ward also agreed to sell the real property to him either orally or in writing.

We, therefore, conclude that the district court did not err in granting summary judgment to the Wards as a matter of law because Garrison has failed to come forward with evidence of the type of "compelling equitable considerations" or "gross injustice" necessary to defeat the statute of frauds.

11

*Garrison's Attempt to Amend the Petition*

Garrison also contends that the district court erred by denying his attempt to amend his petition to add a new party. Specifically, Garrison sought to add Todd Burroughs—the real estate agent retained by the Wards—as a defendant. Instead of filing a motion to amend pursuant to K.S.A. 2020 Supp. 60-215, Garrison attempted to file a First Amended Petition without leave of the district court. Finding that Garrison had "neither sought nor been granted leave to amend his Petition or to add additional parties to this litigation," the district court struck the First Amended Petition as well as two other related documents filed by Garrison.

We review a district court's decision whether to grant a party leave to file an amended petition under K.S.A. 2020 Supp. 60-215 for abuse of discretion. See *Adamson v. Bicknell*, 295 Kan. 879, 887, 287 P.3d 274 (2012). An abuse of discretion occurs only if "(1) no reasonable person would take the view adopted by the trial judge; (2) the ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion was made." *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

As this court has previously held:

> "A trial court is given broad discretionary power under K.S.A. 2014 Supp. 60-215 to permit or deny the amendment of pleadings, and its actions will not constitute reversible error unless it affirmatively appears that the amendment allowed or denied is so material it affects the substantial rights of the adverse party." *Hajda v. University of Kansas Hospital Authority*, 51 Kan. App. 2d 761, 774, 356 P.3d 1 (2015).

Here, Garrison never filed a motion seeking leave to amend his petition as required by K.S.A. 2020 Supp. 60-215. Instead, without seeking leave of the district court, he filed a document entitled "Todd Burroughs Named as Defendant" and requested

service of process on February 9, 2021. Thereafter, Garrison waited until April 2, 2021, to file a "First Amended Petition," wherein he specifically named Burroughs as a defendant. Even then, he did not seek leave from the district court to do so.

In support of his argument to allow his amended complaint, Garrison asks us to construe certain statements, made by Judge Godderz at a hearing on February 9, 2021, as authorizing him to amend his petition and to join a new party as a defendant. At the hearing, Judge Godderz advised the parties that he would be treating the motion to dismiss as a summary judgment motion. As a result, he gave them a limited amount of time to do discovery related to the motion to dismiss. After doing so, Judge Godderz stated: "[I]f you wish to amend your pleadings *based upon responses* you receive in the written discovery that gets issued, if any, you need to have that on file by April 3rd so the Court has an opportunity to look it over." (Emphasis added.)

We view Judge Godderz' comments in the context of the entire record on appeal. In particular, we note the following discussion held on the record after Garrison filed a "First Amended Petition" without first obtaining leave from the district court to do so. At the hearing held on April 13, 2021, Judge Godderz asked Garrison if he had filed an amended petition:

> "MR. GARRISON:  Yes, you gave us till the 2nd of this month to file an amended petition after discovery and so I filed it.

> "THE COURT:  I didn't . . . say anything about an amended petition . . . .

>        . . . .

> "What changed in the petition?

> "MR. GARRISON:  Basically facts were added that implicated Todd Burroughs for contract interference, specific counts for him for Count 2.

13

"MR. BROCK [Counsel for the Wards]:  I don't know if this would be helpful, but my recollection and my understanding at the February 9th hearing was that the Court allowed both parties to amend responses as it related to the motion to dismiss. I didn't understand that to mean that we could amend the [petition].

"THE COURT:  That was the Court's intention and that was the Court's ruling. The amendments were not . . . to amend the petition. And by statute the only way to amend the petition would be to file—because of the way the case has gone and the fact that there's been an answer filed, and there's been over thirty days since the answer was filed, there would necessarily need to [file] an actual motion requesting to amend the petition. "Your amendment from what you're saying is to add a whole other party and whole other cause of action and that was not the reason for the continuance in this case.

"The reason for the continuance in this case was only to address the motion to dismiss and to allow parties to present any discovery so that they could supplement the motion to dismiss or the response to the motion to dismiss. Not to amend the petition.

        . . . .

". . . I'm not going to consider your amended petition. You haven't filed a motion requesting to amend your petition and I'm not considering it today. The issue before the Court today is the motion to dismiss and that concerns the original petition."

Of course, the district court is in the best position to know what it ordered at the hearing on February 9, 2021. Although the district court could have used clearer language, it appears that the district court simply intended to allow the parties to amend the documents relating to the motion to dismiss—which was now being treated as a motion for summary judgment—to be amended based on the responses they received to their discovery requests. It does not appear from the record that the district court intended to grant Garrison leave to file an amended petition much less to add an additional party to the lawsuit.

Even if we assumed that the district court intended to grant Garrison leave to file an amended petition, we do not find that the court erred in striking the First Amended Petition. As Garrison advised the district court, the purpose of filing an amended petition was to bring in a new party and to assert a claim for interference with contract against him. However, we have concluded that there was no enforceable agreement between Garrison and the Wards for the sale of the real estate. Accordingly, Burroughs could not have interfered with a nonexistent contract. As a result, we find that the district court did not err in denying Garrison's amended petition based on the circumstances presented in this case.

*Imposition of Sanctions under K.S.A. 2020 Supp. 60-211*

Garrison further contends that the district court erred in imposing sanctions against him under K.S.A. 2020 Supp. 60-211. A district court's decision to impose sanctions under K.S.A. 2020 Supp. 60-211 is discretionary. As such, we will not disturb a district court's decision to impose sanctions absent a showing of an abuse of discretion. *In re Marriage of Bergmann & Sokol*, 49 Kan. App. 2d 45, 50, 305 P.3d 664 (2013). The factors necessary to establish an abuse of judicial discretion were discussed in the previous section of this opinion. See *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). As the party asserting error, Garrison bears the burden of establishing that the district court abused its discretion. See *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

K.S.A. 2020 Supp. 60-211(b) provides:

"(b) *Representations to the court.* By presenting to the court a pleading, written motion or other paper, whether by signing, filing, submitting or later advocating it, an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief formed after an inquiry reasonable under the circumstances:

(1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation;

(2) the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Additionally, K.S.A. 2020 Supp. 60-211(c) states:

"(c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subsection (b) has been violated, the court may impose an appropriate sanction on any attorney, law firm or party that violated the statute or is responsible for a violation committed by its partner, associate or employee. The sanction may include an order to pay to the other party or parties that [the] reasonable expenses, including attorney's fees, incurred because of the filing of the pleading, motion or other paper. A motion for sanctions under this section may be served and filed at any time during pendency of the action, but must be filed not later than 14 days after the entry of judgment."

Here, the district court ordered Garrison to pay the Wards' attorney fees as a sanction. In its journal entry entered on October 28, 2021, the district court explained:

"22. [T]he Court finds that this action was filed for an improper purpose such as to cause unnecessary delay and attempt to force Defendants to sell the Real Estate to Plaintiff even though they were not legally obligated to do so. Plaintiff's claims are clearly precluded by K.S.A. 33-106 and applicable case law. However, Plaintiff nevertheless sent lis pendens

16

notices to the title company and filed this action in order to purposefully stop the sale of the Real Estate to another buyer.

"23. Plaintiff's actions in circumventing Defendants' attorney in fact and also their real estate agent in order to attempt to persuade Jean Ward (who is 90 years old) by telephone to sell the Real Estate to Plaintiff, and also Plaintiff's conduct in sending letters to Defendants and to the title company threatening this litigation would take years to resolve and would cost more to resolve than the value of the Real Estate unless the Real Estate was sold to Plaintiff, rise to the level of imposing sanctions against Plaintiff. Therefore, sanctions against Plaintiff are justified.

"24. Sanctions are hereby imposed against Plaintiff as a result of his breach of K.S.A. 60-211(b)(2) & (3). An appropriate sanction in this case against Plaintiff is to require him to reimburse Defendants for their costs, expenses and attorney fees incurred in defending against the frivolous claims made by Plaintiff. Therefore, Plaintiff is hereby ordered to pay Defendants $6,222.46 as sanctions for violating K.S.A. 60-211(b)(2) & (3). The hourly rate charged by Defendants' attorney is $215 per hour, and in light of the pleadings, hearings and written discovery conducted herein, 30 hours is a reasonable amount of time for Defendant's [sic] attorney to have spent defending this case and $215 per hour is a reasonable hourly rate."

We find that the factual findings made by the district court are supported by substantial competent evidence contained in the record on appeal. Further, as discussed above, Garrison knew or should have known that there was not an enforceable agreement for the purchase of the real property. Under the circumstances presented, we cannot say that it was unreasonable for the district court to impose sanctions. Likewise, we do not find that the district court made a mistake of law or fact in doing so. Therefore, finding no abuse of discretion, we affirm the district court's imposition of sanctions under the circumstances presented in this case.

17

*Request to Disqualify Judge Godderz*

Finally, Garrison contends that the district court erred in not disqualifying Judge Eric W. Godderz from presiding over this case. We note that Garrison did not file his motion to disqualify Judge Godderz until he had already stated his ruling regarding the motion for summary judgment as well as the other pending motions from the bench. Only then did Garrison file an affidavit seeking Judge Godderz' disqualification under K.S.A. 20-311d.

As our Supreme Court has held:

"K.S.A. 20-311d(c) identifies several circumstances requiring a trial judge's recusal, one of which is when a party has 'cause to believe' that a judge's 'personal bias, prejudice or interest' would prevent the litigant from receiving a fair trial. Under the statute, a litigant may seek a trial judge's recusal by timely filing a motion for a change of judge. If the judge denies the motion, the litigant may file an affidavit detailing the basis for the litigant's belief that the challenged judge cannot provide a fair trial, and the district's chief judge or the chief judge's designee then reviews the affidavit for legal sufficiency. K.S.A. 20-311d.

"If the reviewing judge finds the affidavit to be legally insufficient and the defendant challenges that ruling on appeal, we examine the legal sufficiency of the affidavit de novo and determine whether the alleged facts give "'fair support for a well-grounded belief'" that the litigant cannot receive a fair trial. *Sawyer*, 297 Kan. at 908 (quoting *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 385, 22 P.3d 124 [2001]). An affidavit is legally sufficient when the facts alleged create reasonable doubt about the judge's partiality in the mind of a reasonable person with knowledge of all the circumstances. 297 Kan. at 908." *State v. Hurd*, 298 Kan. 555, 569, 316 P.3d 696 (2013).

A review of the record in this case reveals that Judge Godderz informally denied Garrison's motion as required by K.S.A. 20-311d(a). The Chief Judge of the Franklin County District Court then assigned the matter to Judge Douglas P. Witteman for review

18

under K.S.A. 20-311d(b). After reviewing the affidavit filed by Garrison in support of his motion, Judge Witteman denied the motion. In doing so, Judge Witteman ruled that Garrison's affidavit was "legally insufficient to disqualify" Judge Godderz from continuing to preside over this case.

On June 24, 2021, Judge Witteman entered an order explaining his ruling. Among other things, Judge Witteman found:

"In his affidavit Plaintiff lists five (5) cases (including the instant case) in which Plaintiff was a party and Judge Godderz was the presiding judge. Plaintiff goes into great detail to allege facts that he believes relevant and that he believes are supportive of his position in said cases. Likewise, Plaintiff goes into great detail alleging specific decisions and findings made by Judge Godderz in each case that he believes are erroneous.

. . . .

" . . . Simply stated, Petitioner believes that adverse rulings by Judge Godderz in the aforementioned five (5) cases is sufficient evidence of bias and/or prejudice to disqualify Judge Godderz.

"As stated in K.S.A. 20-311d(d):

"**In any affidavit filed pursuant to this section, the recital of previous rulings or decisions by the judge on legal issues** or concerning the legal sufficiency of any prior affidavits filed by counsel for a party in any judicial proceeding, or filed by such counsel's law firm, pursuant to this section, **shall not be deemed legally sufficient for any belief that bias or prejudice exists.** (emphasis added)

"Plaintiff is clearly complaining about past rulings made by Judge Godderz as the basis for his request for disqualification. The law is clear that 'previous rulings of a trial judge, although numerous and erroneous, are not alone sufficient to show bias or prejudice to disqualify a judge under K.S.A. 20-311d. Such rulings are subject to review and correction on appeal and will not justify disqualification.' State, ex rel. *Miller v.*

19

*Richardson*, 229 Kan. 234, 238, Syl 2 (1981), *Hulme v. Woleslagal*, 208 Kan. 385, 397, Syl. 10 (1972) K.S.A. 20-311d(d). A trial judge's allegedly incorrect rulings could not form the basis for recusal. See *State v. Dunn*, 243 Kan. 414, 758 P. 2d 718 (1988).

"Based on the allegations and information contained in Plaintiff's Affidavit in Support of Plaintiff's Motion to Change Judge, the Court FINDS that pursuant to the provisions of K.S.A. 20-311d, the Affidavit is legally insufficient to disqualify District Judge Eric W. Godderz from further presiding over the instant case. Petitioner's request to change judge is denied. The case shall be returned to Judge Godderz's docket for further proceedings."

On appeal, Garrison continues to argue that Judge Godderz is biased against him. Once again, he relies upon the five cases discussed by Judge Witteman in which he appeared as a litigant before him. However, as Judge Witteman correctly found, K.S.A. 20-311d(d) provides that "the recital of previous rulings or decisions by a judge . . . shall not be deemed legally sufficient for any belief that bias or prejudice exists." Because Garrison's affidavit is merely a recital of previous rulings or decisions by Judge Godderz, we find that Judge Witteman appropriately determined that it was legally insufficient to establish the type of bias or prejudice contemplated by the statute. Thus, we do not find Judge Witteman's decision to deny Garrison's motion to disqualify Judge Godderz to be erroneous.

*Motion for Appellate Attorney Fees*

While this appeal was pending, the Wards timely filed a motion for appellate attorney fees pursuant to Kansas Supreme Court Rule 7.07 in the amount of $4,191.30. In their motion, the Wards assert that "[j]ust as in the underlying cause, the Appellant brings this frivolous appeal for an improper purpose, which has caused, and continues to cause, Appellees to incur unnecessary costs, expenses, and attorney fees to defend." In support of the motion, Keith A. Brock—counsel for the Wards—filed an affidavit and an itemization of his attorney fees incurred to defend this appeal as required by Kansas Supreme Court Rule 7.07(b)(2). In response, Garrison argues that the Wards "could have

20

completely avoided hiring a lawyer" had they simply sold the real property to him as he wanted them to do. He also suggests that the Wards have "unclean hands" by defending the lawsuit and appeal that he filed.

We have authority to assess attorney fees in this matter pursuant to Kansas Supreme Court Rule 7.07(c). This rule provides:

"(c) *Frivolous Appeal.* If an appellate court finds that an appeal has been taken frivolously, or only for the purpose of harassment or delay, it may assess against the appellant . . . a reasonable attorney fee for the appellee's counsel. A motion for attorney fees under this subsection must comply with subsection (b)(2). If the motion is granted, the mandate must include a statement of the assessment, and execution may issue on the assessment as for any other judgment, or in an original case the clerk of the appellate courts may issue an execution." (2022 Kan. S. Ct. R. at 52).

As we have already found, Garrison either knew or should have known that he did not have an enforceable contract to purchase the Wards' real property. Likewise, he failed to come forward with evidence to support his promissory estoppel claim against the Wards. Consequently, we find no merit in Garrison's argument that the Wards somehow had "unclean hands" in this matter. Rather, based on our review of the record, we find that Garrison's conduct throughout this litigation has been frivolous and/or harassing toward the Wards. As a result, we find that an award of attorney fees under Kansas Supreme Court Rule 7.07(c) is appropriate under the circumstances presented.

As to the amount of attorney fees, we have reviewed the affidavit and itemized statement for professional services considering the factors set forth in Rule 1.5(a) of the Kansas Rules of Professional Conduct (2022 Kan. S. Ct. R. at 333). In particular, we find that Brock is an experienced attorney and that his hourly rate is reasonable in light of his experience, reputation, and ability as well as the amount customarily charged by other attorneys for similar legal services. We also find that the hours expended by Brock are

reasonable based on the time, labor, and skill required to defend this appeal. Likewise, we find that the attorney fees are reasonable based on the amount involved and the results obtained. Hence, based on our review of the motion, affidavit, and itemization, we grant the Wards' request for appellate attorney fees in the amount of $4,191.30.

CONCLUSION

In summary, we affirm the district court's granting of summary judgment to the Wards as a matter of law. We also affirm the district court's decision to strike the First Amended Petition filed by Garrison adding a new defendant to this case. In addition, we affirm the district court's imposition of sanctions against Garrison pursuant to K.S.A. 2020 Supp. 60-211. Further, we affirm the district court's decision to deny the motion to disqualify Judge Godderz from presiding over this case. Finally, we grant the Wards' motion for appellate attorney fees in the amount of $4,191.30.

Affirmed.